DMB:DD:mel:2000V00533

FILED
WILLIAMSPORT

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JUL 1 7 2000

PER _____
DEPUTY CLERK

ANTONIO GARCIA,                  :
        Petitioner        :
                        :
        v.               :  Civil No. 1:CV-00-0803
                        :  (Kane, J.)
BUREAU OF PRISONS,               :
        Respondent        :

**RESPONSE TO SHOW CAUSE ORDER**

### I.  Procedural History

On May 3, 2000, Petitioner Antonio Garcia, a federal inmate currently incarcerated at the Federal Correctional Institution, Allenwood, Pennsylvania (FCI-Allenwood), filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  By Order dated June 26, 2000, this Court issued a rule to show cause directing the Bureau of Prisons, Respondent, to address the allegations in the petition within twenty days.[1]  The following is submitted in response to the show cause Order on behalf of Respondent.

### II.  Factual History

On March 25, 1999, Garcia was the subject of a disciplinary hearing held at FCI-Allenwood.  At that hearing, all of the

---

[1] Garcia improperly names the Bureau of Prisons as Respondent in this action.  The proper Respondent should be Michael A. Zenk, the Warden at FCI-Allenwood.  As such, he should be substituted as the respondent pursuant to 28 U.S.C. § 2242.

procedural safeguards were implemented in accordance with policy. Garcia had received written notice of the charges on March 3, 1999; his hearing was heard by an impartial hearing examiner; he was provided with an opportunity to call witnesses and present evidence; and he was provided with a written statement of the reasons for the sanctions imposed.  Finally, Garcia was represented at the hearing by D. Golferi, Vocational Training Supervisor. (See Ex. 1 and Ex. 9 ¶ 2.)

Garcia was charged with Possession of any Narcotics, Marijuana, Drugs, or Related Paraphernalia, a violation of Offense Code 113 of Bureau of Prisons' Program Statement 5270.07, Inmate Discipline and Special Housing.  (Ex. 2 at 5.)  Discipline Hearing Officer (DHO) Zimany first determined that Garcia understood his rights and that there were no procedural errors. He then heard all of the evidence presented by staff members and by Garcia on his own behalf.  (Ex. 1 at 1-4; Ex. 9 ¶ 4.)

Garcia indicated that he understood his rights and that no procedural errors had occurred during the hearing.  He then denied that he had possessed the narcotic pill and denied having any knowledge that it had been hidden in his locker.  (Ex. 1 at 1-2; Ex. 9 ¶ 5-6.)

Garcia's staff representative also testified.  Golferi indicated that Garcia was a student in the Vocational Training class and carpentry class, that he was an attentive student who presented few problems, and that Garcia's records indicated no

2

history of drug use.  Finally, Golferi testified that there had been no violations of Garcia's due process rights at the hearing. (See Ex. 1 at 1; Ex. 9 ¶ 7.)

Garcia also offered the testimony of inmate Miguel Polanco. Polanco indicated that he had been Garcia's cell mate for over twenty months and had never known him to be involved with drugs. He further testified that he did not believe the narcotic pill belonged to Garcia.  (Ex. 1 at 2; Ex. 9 ¶ 8.)

In addition to the evidence and testimony presented by Garcia, the DHO also considered documentary evidence provided by staff.  Specifically, he reviewed a memorandum presented by Lieutenant Womeldorf dated March 16, 1999; a memorandum from Officer Danison dated March 2, 1999; and a memorandum from Registered Nurse Lantz, dated March 2, 1999.  (Ex. 1 at 2; Exs. 3-5; Ex. 9 ¶ 9.)  At no time did Garcia or his staff representative indicate that they were unaware of these documents or that the hearing would be prejudiced because they had been unable to review them and prepare a defense.  (Id.)  Finally, the DHO considered the Incident Report and Investigation which were prepared upon discovering the narcotic pill hidden in Garcia's locker. (Ex. 1 at 3-6; Ex. 6; Ex. 9 ¶¶ 9-14.)

Based upon all of the evidence and testimony provided, the greater weight of the evidence supported a finding that on March 2, 1999, a pill had been found in Garcia's locker, field tested, and determined to contain heroin.  At that time, the Health

3

Services Department was contacted.  Nurse Lantz confirmed that
FCI-Allenwood does prescribe two forms of medication which could
have tested positive for heroin, however, Garcia had not been
prescribed either of them.  (See Ex. 1 at 3; Ex. 9 ¶ 15.)

The DHO also considered Garcia's exculpatory statements that
he had no knowledge the pill had been hidden in his locker and
that the brown color of the pill indicated it had been in the
locker for a considerable period of time.  The DHO did not
believe, however, that the color of the pill was indicative of
the length of time it had been hidden in the locker.  (Ex. 1 at
3; Ex. 9 ¶ 16.)

Furthermore, Program statement 5270.07, Chapter 3, Inmate
Discipline and Special Housing, indicates "[i]t is [the inmate's]
responsibility . . . to keep [his] area free of contraband."
(Ex. 7, Inmate Responsibilities, ¶ 5.)  Garcia alleged that the
pill was hidden in an area which he could not easily access.
Nevertheless, the DHO found that the pill was hidden in an area
within Garcia's domain and control and that Garcia had easy
access to the pill.  (Ex. 9 ¶¶ 17-18.)

Therefore, the greater weight of the evidence was conclusive
that Garcia had possessed a narcotic pill as charged.  Garcia was
found guilty and sanctioned in accordance with Bureau of Prisons'
policy.  (Ex. 2.)  Specifically, the DHO disallowed forty-one
days of Good Conduct Time credits.  In addition, he suspended
Garcia's visiting privileges for 365 days.  Finally, the DHO

4

restricted Garcia to disciplinary segregation for sixty days.
(Ex. 1 at 4; Ex. 9 ¶¶ 19-20.)  Subsequently, Garcia exhausted all
available administrative remedies (see Ex. 10 ¶ 5) and commenced
the within lawsuit challenging the disciplinary proceedings which
found him guilty.

### III.   Question Presented

Should the petition be denied because the DHO had sufficient
evidence to find that Garcia had possessed a narcotic pill in
violation of Bureau of Prisons' policy?

Suggested answer in the affirmative.

### IV.   Argument

**The DHO Appropriately Found That the Greater Weight of the
Evidence Supported the Conclusion That Garcia Had Possessed a
Narcotic Pill in Violation of Bureau of Prisons' Policy.**

Garcia was not denied due process and, therefore, his Good
Conduct Time was properly revoked.  In Wolff v. McDonnell, 418
U.S. 539 (1974), the Supreme Court held that where certain basic
procedural elements of the discipline process exist, the
Constitution's guarantee of procedural due process would be
satisfied.  The five elements required for procedural due process
with regard to a prison disciplinary hearing are: (1) written
notice of the charged misconduct at least twenty-four hours
before the hearing; (2) an impartial hearing body; (3) an
opportunity to present witnesses and documentary evidence; (4)
assistance for illiterate inmates or in complex cases; and (5) a

written statement of the evidence relied upon and reasons for the sanction.  Id.  Additionally, the reviewing court will only overturn the decision of the DHO if no evidence supports the hearing officer's conclusion.  "This standard is met if there was **some evidence** from which the conclusion of the [DHO] could be deduced."  Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445, 456 (1985) (emphasis added).

In Garcia's case, all of the procedural safeguards were implemented in accordance with policy: (1) he received written notice of the charges on March 3, 1999, well in advance of the March 25, 1999 hearing; (2) he was heard by an impartial hearing examiner; (3) he was provided with an opportunity to call witnesses and present evidence; (4) he was provided staff representation; and, (5) he was provided with a written statement of the reasons for the sanctions imposed.  (See Ex. 1 and Ex. 9 ¶ 2.)  The DHO heard testimony from Garcia, his staff representative, and inmate Miguel Polanco.  The DHO also considered the Incident Report and Investigation and documentary evidence provided by staff.  (Id.)  After reviewing all of this evidence and testimony, the DHO determined that the greater weight of the evidence supported a finding that Garcia had committed the prohibited act as charged.  (See Ex. 1 and Ex. 9 ¶ 4.)

6

Garcia alleges that he was not given proper notice of the several memoranda used against him at the hearing. Specifically, he claims he did not see the memoranda until the hearing began. Due Process, however, requires only that the inmate be given twenty-four hour notice of the charges, not of the evidence to be used at the hearing. Wolff, supra.

This case closely parallels Smith v. Mendez, Civil No. 4:CV-99-0301, slip op. (M.D. Pa., Apr. 15, 1999)(McClure, J.), attached. There, the DHO deferred the hearing to seek additional clarification from the reporting officer. Petitioner argued that his due process rights were violated because he did not have any advance notice of the memorandum and could not prepare to respond to it. In finding this argument to be without merit, Judge McClure stated:

> First, Wolff only requires that he be provided with twenty-four hour advance written notice of the charges against him. Petitioner received this notice prior to his first hearing which was conducted on August 10, 1998. The charges never changed against him and he always had knowledge of the charges against which he was defending.
>
> Further, Officer Engel was asked by the hearing officer to prepare the supplemental memorandum to address the issue of why his attention was drawn to the drain pipe when he searched petitioner's cell. In the memorandum, Engel stated that upon entering the cell, he noticed that the drain pipe was loose. Even if petitioner were entitled to be provided with this evidence, it is clear, based upon the instant record, that the contents of the memo were disclosed to him during the hearing. . . . It therefore appears that petitioner was provided with this evidence during the hearing and could have challenged such evidence during the hearing. As such, his argument is found to be without merit.

7

Smith v. Mendez, slip op. at 9-10.

The present case is identical to Smith.  Here, Garcia argues
that he was not given advance notice of the memoranda used
against him at the hearing.  As in Smith, however, the inmate was
made aware of the charges and the memoranda did not change them.
(See Ex. 9 ¶¶ 11-12.)  Additionally, as in Smith, Garcia was
provided with the memoranda at his hearing, and the DHO discussed
all of the documentary evidence which had been submitted with
Garcia and his staff representative.  Thus, Garcia could have
objected to any of the documents, sought a postponement of the
hearing, or challenged the evidence during the hearing.  See
Smith, supra.  Neither Garcia, nor his staff representative
objected to the use of these documents, requested a postponement
to prepare a response to the evidence, or otherwise challenged
the evidence or its use during the hearing.  (Id. ¶¶ 11-12.)  To
the contrary, both Garcia and his staff representative agreed
that none of Garcia's procedural rights had been violated.  (Id.)
Therefore, as in Smith, this argument is without merit.

Garcia also indicates that the DHO failed to provide him
with a memorandum written by then Acting Captain Maiorana.  To
the contrary, the DHO was completely unaware of the memorandum at
the time of the hearing.  (Id. ¶ 13.)  Furthermore, if Garcia
believed he had been prejudiced by the DHO's failure to provide
or utilize a particular document, he should have objected or
sought a postponement.  See Smith, supra.  Again, neither Garcia

8

nor his staff representative objected to the DHO's failure to provide Acting Captain Maiorana's memorandum or sought a postponement to obtain the memorandum. (Ex. 9 ¶ 13.)  Therefore, this petition should be denied because none of Garcia's due process rights have been violated.

Finally, if the Court were to determine that Garcia was inappropriately sanctioned, the proper remedy would be to expunge the DHO report and hold a new hearing.  Thus, if the Court is going to grant this Petition, it must also order Garcia to appear before the DHO and present his evidence again so a new hearing can be held, and Garcia may be re-sanctioned.

## V.  Conclusion

The petition for writ of habeas corpus should be denied and the case dismissed with a certification that any appeal would be deemed frivolous, lacking in probable cause, and not taken in good faith.

Respectfully submitted,

DAVID M. BARASCH
United States Attorney

DULCE DONOVAN
Assistant U.S. Attorney
MICHELE E. LINCALIS
Paralegal Specialist
316 Federal Building
240 West Third Street
Williamsport, PA  17703

OF COUNSEL:        DOUGLAS S. GOLDRING
                   Attorney
                   Federal Correctional Institution, Allenwood
                   P.O. Box 2500
                   White Deer, PA 17887


Dated: July 17, 2000

NERO
FCJ-A
BB

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

FILED
WILLIAMSPORT, PA

APR 15 1999

MARY E. D'ANDREA, CLERK
PER _____
DEPUTY CLERK

ANTHONY SMITH,                    :

      Petitioner                 :

                    :

    v.                          :        CIVIL NO. 4:CV-99-0301

                    :

JAKE MENDEZ,                      :        (Judge McClure)

      Respondent                 :

## M E M O R A N D U M

### Background

    Anthony Smith filed this petition for writ of habeas corpus
pursuant to 28 U.S.C. § 2241 on February 24, 1999. He is currently
confined at the Federal Correctional Institution at Allenwood (FCI-
Allenwood), Pennsylvania. He has paid the required filing fee in
this matter. Named as respondent is Jake Mendez, warden at FCI-
Allenwood. On March 2, 1999, the court issued a Show Cause Order
directing service of the petition on respondent and directing that
a response to the petition be filed within twenty (20) days. (Doc.
2). A response was thereafter filed on March 22, 1999. (Doc.3).
Petitioner filed his traverse on April 5, 1999. (Doc. 5).

    In his petition, Smith challenges a decision of the
disciplinary hearing officer which resulted in sixty (60) days of
disciplinary custody and the loss of twenty-seven (27) days of good
time credit. He has exhausted his available administrative
remedies.

    On August 6, 1998, while petitioner was incarcerated at FCI-

Allenwood, Officer Engel was making routine rounds in petitioner's
housing unit. As he passed by petitioner's cell, he noticed a towel
covering the window. As Engel attempted to open the door to the
cell, he was unable to do so. At that point, he instructed
petitioner to open the door. (Doc. 4, Exh. 1, Torres Declar.,
Attach. 2). Petitioner was sitting on the toilet at the time. He
was ordered to put his pants on and leave the cell. At this time,
Engel began to inspect the cell when he noticed that a drainpipe
was loose. The officer unscrewed the drain and observed an 8.5 inch
sharpened metal rod in the drain pipe. Petitioner does not share
his cell with any other inmate. Based on the results of the search,
Engel prepared an incident report charging petitioner with
possession of a weapon. (Id., Attach. 2, Incident Report).

On August 8, 1998, a copy of the incident report was delivered
to petitioner. (Id., Attach. 5). A unit disciplinary committee
hearing was conducted on August 10, 1998. Based on the seriousness
of the charge, the matter was referred to the disciplinary hearing
officer with a recommendation that petitioner receive thirty (30)
days disciplinary segregation.

A hearing was thereafter held on August 20, 1998 before
disciplinary hearing officer Zimany. At the hearing, petitioner was
represented by Mr. Potora, a member of the FCI-Allenwood staff.[1]
(Doc. 4, Exh. 2, Zimany Declar., Attach. 2). At the hearing, Potora

---

[1] Mr. Potora is apparently employed as a case manager at the
prison.

2

07/12/2000 08:57    7173267916                USATTY                              PAGE 04

spoke on petitioner's behalf and reported that he was a good worker. No concerns were raised by Potora with respect to petitioner's due process rights at the hearing.

At the hearing petitioner also spoke on his own behalf. He stated that he had only been in this particular cell for approximately 7 weeks, and housed alone in the cell for only four to five of those weeks. He stated that he never checked the drain that was located in his cell and denied any knowledge with respect to the weapon. He stated that it was his belief that the weapon had been placed in the drain in retaliation for his involvement in several sports teams. (Doc. 4, Exh. 2, Attach. 2).

The hearing officer then deferred the hearing because he wanted to obtain additional evidence from the reporting officer. In particular, he wanted to know the circumstances surrounding what had prompted Engel to check the drain pipe in petitioner's cell. The hearing was reconvened on August 27, 1998. Petitioner waived his rights to staff representation at this hearing. (Doc. 4, Exh. 2, Zimany Declar. ¶9). At the hearing, a memorandum prepared by the reporting officer setting forth the details of his search of petitioner's cell was discussed. Petitioner still denied any knowledge with respect to the weapon. (Id. at ¶10).

After considering all of the evidence before him, the hearing officer found the reporting officer to be credible and petitioner to have committed the prohibited act of possession of a weapon. Petitioner was sanctioned to sixty (60) days disciplinary

3

segregation and the loss of twenty-seven (27) days of good time credit.

In his petition for writ of habeas corpus, petitioner contends that he cannot be held accountable for contraband that is removed from the institution's sewer system over which he has no control. He claims that despite his testimony that he had no knowledge as to how the weapon got into the pipe, he was still found guilty. He contends that his due process rights were violated in that the hearing officer based his decision on the supplemental memorandum prepared by the reporting officer and that he never received this memorandum until after the hearing was over. Thus, petitioner argues that he had no opportunity to refute this evidence.

Petitioner further contends that based on the evidence presented at the hearing, he should not have been found guilty. He claims that all that was proven was that he had "access" to the pipe where the weapon was found, and that to be found guilty he must have had possession of the weapon. He claims that the evidence does not support the charge. As relief, he requests that the incident report be expunged and that the lost good time credit be restored. For the reasons that follow, the petition will be denied.

**Discussion**

Habeas corpus petitions brought under § 2241 are subject to summary dismissal pursuant to Rule 4 ("Preliminary Consideration by the Judge") of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254 (1977) (applicable

4

to § 2241 petitions under Rule 1(b)). See, e.g., Patton v. Fenton, 491 F. Supp. 156, 158-59 (M.D. Pa. 1979). Rule 4 provides in pertinent part: "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified." A petition may be dismissed without review of an answer "when the petition is frivolous, or obviously lacking in merit, or where . . . the necessary facts can be determined from the petition itself. . . ." Allen v. Perini, 424 F.2d 134, 141 (6th Cir.), cert. denied, 400 U.S. 906 (1970). Accord Love v. Butler, 952 F.2d 10, 15 (1st Cir. 1991). The Allen court also stated that "the District Court has a duty to screen out a habeas corpus petition which should be dismissed for lack of merit on its face." 424 F.2d at 141.

The Fourteenth Amendment of the United States Constitution provides in pertinent part: "No State shall...deprive any person of life, liberty, or property, without due process of law...." The Supreme court has mandated a two-part analysis of a procedural due process claim: first, "whether the asserted individual interests are encompassed within the ... protection of `life, liberty or property[,]'" and second, "if protected interests are implicated, we then must decide what procedures constitute `due process of law.'" Ingraham v. Wright, 430 U.S. 651, 672 (1977). If there is no protected liberty or property interest, it is obviously unnecessary

5

to analyze what procedures were followed when an alleged
deprivation of an interest occurred. Liberty interests protected by
the Fourteenth Amendment may arise either from the Due Process
Clause itself or from state law. Meachum v. Fano, 427 U.S. 215,
223-26 (1976). In Wolff v. McDonnell, 418 U.S. 539, 563-73 (1974),
where the plaintiffs were deprived of good time credits as a severe
sanction for serious misconduct, the Supreme Court held that such
inmates have various procedural due process protections in prison
disciplinary proceedings.

It is clear that petitioner was entitled to the procedural due
process protections set forth in Wolff. He has been deprived of
good time credit and, therefore, the duration of his confinement is
affected. A federal prisoner has a constitutional protected liberty
interest in good time credit. Young v. Kann, 926 F.2d 1396, 1399
(3d Cir. 1991); Von Kahl v. Brennan, 855 F. Supp. 1413, 1417 (M.D.
Pa. 1994). Respondent does not dispute that petitioner was entitled
to procedural due process protections, but rather, argues that he
received all the process to which he was entitled.

The Supreme Court recognized in Wolff that "prison
disciplinary proceedings are not part of a criminal prosecution and
the full panoply of rights due a defendant in such proceedings does
not apply." Id. at 556. Nonetheless, the Court held that a prisoner
facing serious institutional sanctions such as a loss of good time
credits is entitled to some procedural protection before penalties
can be imposed. Id. at 563-71. It set forth five requirements of

6

due process in a prison disciplinary proceeding: (1) the right to
appear before an impartial decision-making body; (2) twenty-four
hour advance written notice of the charges; (3) an opportunity to
call witnesses and present documentary evidence, provided the
presentation of such does not threaten institutional safety or
correctional goals; (4) assistance from an inmate representative,
if the charged inmate is illiterate or if complex issues are
involved; (5) a written decision by the fact finders as to the
evidence relied upon and the rationale behind their disciplinary
action. Id. An additional procedural requirement was set forth in
Superintendent, Massachusetts Correctional Inst. at Walpole v.
Hill, 472 U.S. 445, 453-56 (1985). In that case, the Court held
that there must be some evidence which supports the conclusion of
the disciplinary tribunal.

In the instant case, petitioner does not contend that
insufficient or untimely advance written notice of the charges was
given. He does not allege that he requested but was denied
assistance from an inmate representative. In fact, he admits that
in the unit disciplinary committee hearing he was represented by a
staff member and in the subsequent hearing before disciplinary
hearing officer Zimany, he waived staff representation. Likewise,
there is no claim that petitioner was not provided with an
impartial decision-making body. Petitioner also does not raise any
allegations regarding his ability to present documentary evidence
or to call witnesses. Petitioner also does not dispute the fact

7

that he was provided with a written decision by the hearing officer
as to the evidence relied upon and the rationale behind his
decision.

Rather, it is petitioner's contention that the was no evidence
which supported the conclusion of the disciplinary officer. In
particular, he claims that although he testified at the hearing
that he was not guilty and that he should not be held accountable
for contraband removed from the prison's "sewer system," that he was
still found guilty of possession of a weapon. He claims that this
was an arbitrary decision in that there was no evidence to support
the hearing officer's conclusion that he had control over the drain
pipe. He claims that at the hearing he testified that the weapon
could have been in the drain pipe prior to his occupancy of the
cell.

According to the requirements of due process to which
petitioner was entitled, it is clear that there existed "some
evidence" in the record to support the conclusion of the
disciplinary hearing officer. Petitioner does not dispute the
following facts: (1) when officer Engel was conducting routine
rounds, he noticed a towel over the window of petitioner's cell;
(2) when Engel attempted to enter the cell he was unable to do so;
(3) when Engel conducted a search of petitioner's cell, he noticed
that the drain pipe located in the cell was loose; (4) Officer
Engel was immediately able to unscrew the drain pipe with his hand;
(5) upon unscrewing the drain pipe, a weapon was found; and (6)

petitioner is the sole occupant of the cell where the weapon was found.

Clearly, based on the foregoing, there exists "some evidence" to support the finding of guilt on the possession of a weapon charge and to satisfy the mandates of due process. Hill, 472 U.S. at 455. Although petitioner claims that the weapon could have been placed in the drain pipe prior to the time he was assigned to his cell, this allegation in light of the numerous other surrounding facts listed above concerning this incident, certainly does not render the decision of the hearing officer arbitrary or capricious. The findings in a disciplinary hearing are not arbitrary or capricious if there exists a basis in fact to support a disciplinary hearing officer's findings. Edwards v. White, 501 F. Supp. 8 (M.D. Pa. 1979). Certainly, there existed such a basis in the instant case.

Petitioner also argues that he was denied due process in that at the August 27, 1998 hearing which was conducted before the disciplinary officer, he was not provided with the supplemental memorandum prepared by Officer Engel. Petitioner contends that he did not receive a copy of the memo until after the hearing was concluded and therefore could not challenge the contents of the memorandum. As such, he contends that he was denied his due process right under Wolff to 24 hour notice of all statements planned to be used against him at his disciplinary hearing.

Petitioner's argument is without merit. First, Wolff only

9

requires that he be provided with twenty-four hour advance written
notice of the charges against him. Petitioner received this notice
prior to his first hearing which was conducted on August 10, 1998.
The charges never changed against him and he always had knowledge
of the charges against which he was defending.

Further, Officer Engel was asked by the hearing officer to
prepare the supplemental memorandum to address the issue of why his
attention was drawn to the drain pipe when he searched petitioner's
cell. In the memorandum, Engel stated that upon entering the cell,
he noticed that the drain pipe was loose. Even if petitioner were
entitled to be provided with this evidence, it is clear, based upon
the instant record, that the contents of the memo were disclosed to
him during the hearing. Although petitioner contends that he first
learned of Engel's memorandum after his hearing was over, a
declaration has been submitted by hearing officer Zimany, which
states that the contents of this memorandum were disclosed to
petitioner during the course of the August 27, 1998 hearing. (Doc.
4, Exh. 2, Zimany Declar. ¶10). Also submitted by respondent is a
copy of the disciplinary hearing officer's report which states that
the contents of the supplemental memorandum were disclosed to
petitioner during the course of the August 27, 1998 hearing. (Doc.
4, Exh. 2, Attach. 2, DHO Report). It therefore appears that
petitioner was provided with this evidence during the hearing and
could have challenged such evidence during the hearing. As such,
his argument is found to be without merit.

In light of the foregoing, the court is satisfied that petitioner received all of the due process to which he was entitled under Wolff, and it is clear that some evidence was presented to support the decision of the disciplinary tribunal as required by Hill. The petition for writ of habeas corpus will be summarily denied. An appropriate order is attached.

_____
JAMES F. McCLURE, JR.
United States District Judge

Dated: April 15 , 1999

JFM:lq

FILED
WILLIAMSPORT, PA

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA          APR 1 5 1999

MARY E. D'ANDREA, CLERK
PER _____
                DEPUTY CLERK

ANTHONY SMITH,                          :
                                        :
            Petitioner                  :
                                        :
       v.                               :   CIVIL NO. 4:CV-99-0301
                                        :
JAKE MENDEZ,                            :   (Judge McClure)
                                        :
            Respondent                  :

### O R D E R

NOW, THEREFORE, THIS 15 DAY OF APRIL, 1999, for the reasons
set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1.   The petition for writ of habeas corpus is DENIED.

2.   The Clerk of Court is directed to close this case.

3.   Based on the court's conclusion herein, there is no basis
for the issuance of a certificate of appealability.

JAMES F. McCLURE, JR.
United States District Judge

JFM:lq

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

ANTONIO GARCIA,                    :
            Petitioner            :
                                  :
      v.                          :    Civil No. 1:CV-00-0803
                                  :    (Kane, J.)
BUREAU OF PRISONS,                :
            Respondent            :

### CERTIFICATE OF SERVICE BY MAIL

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on July _17_ , 2000, she served a copy of the attached

### RESPONSE TO SHOW CAUSE ORDER

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Williamsport, Pennsylvania.

Addressee:

Antonio Garcia
Reg. No. 42994-054
FCI Allenwood
P.O. Box 2000
White Deer, PA 17887

_Michele E. Lincalis_
MICHELE E. LINCALIS
Paralegal Specialist