(4)
7/17/00
lp

DMB:DD:mel:2000V00533

**FILED**
WILLIAMSPORT

JUL 17 2000

PER _____ <br> DEPUTY CLERK

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTONIO GARCIA,<br>　　　　　Petitioner | : <br> : <br> : |
| v. | : 　Civil No. 1:CV-00-0803 <br> : 　(Kane, J.) |
| BUREAU OF PRISONS,<br>　　　　　Respondent | : <br> : |

### EXHIBITS TO RESPONSE TO SHOW CAUSE ORDER

DAVID M. BARASCH
United States Attorney

DULCE DONOVAN
Assistant U.S. Attorney
MICHELE E. LINCALIS
Paralegal Specialist
316 Federal Building
240 West Third Street
Williamsport, PA  17703

Dated: July 17 , 2000

# EXHIBIT
# 1

*DHO*

| | |
|---|---|
| U.S. Department of Justice<br>Federal Bureau of Prisons | Discipline Hearing Officer Report (DHO)<br>Incident Report Number: 663535 |

---

FCI Allenwood (Med)                                    Security Level - Medium

Name of Inmate: GARCIA, ANTONIO                              Reg. No. 42994-054
Date of Incident Report: 03/02/99                                    Unit: 3A
Date of Incident: 03/02/99                                  Offense Code(s): 113

> Summary of Charges
> -Possession of any narcotics, marijuana, drugs, or related
>  paraphernalia

I. NOTICE OF CHARGE(S)

 A. Advanced written notice of charge (copy of Incident Report) was
    given to inmate on 03/03/99 at 17:30 by:
    J. JOHNSON, LIEUTENANT

 B. The DHO Hearing was held on 03/25/99 at 10:30.

 C. The inmate was advised of the rights before the DHO by:
    V. HURSH, COUNSELOR on 03/08/99
    and a copy of the advisement of rights form is attached.

---

II. STAFF REPRESENTATIVE

 A. Inmate waived right to staff representative?  No.

 B. Inmate requested staff representative:
    D. GOLFERI, VOCATIONAL TRAINING SUPV.

 C. Requested staff representative declined or could not appear but inmate
    was advised of option to postpone hearing to obtain another staff
    representative with the result that...
    N/A.

 D. A staff representative was appointed:
    N/A.

    Staff Representative Statement:

    Mr. Golferi indicated that you are a student in Vocational Training
    class and Carpentry.  He indicated that you are one of the most
    attentive and least problematic students in the class.  He indicated
    that your records do not indicate any history of drug abuse.  Mr.
    Golferi did not raise any concerns regarding your due process
    rights.

---

III. PRESENTATION OF EVIDENCE

 A. Inmate denies the charges.

GARCIA                42994-054            663535            03/25/99            page 2

B.  Summary of Inmate Statement:

You indicated that you understood your rights and were ready to
proceed with the hearing.  You did not raise any complaints of
procedural errors during the hearing.

You denied possession of the narcotic pill and you denied any
knowledge of it being in your locker.  You stated that you have been
tested twice during your confinement and the results were negative.
You stated this was your first report you ever received during
confinement.  You indicated that you were in that cell and you used
that locker for approximately one year.  You indicated that you
cleaned the locker, but you stated that you never found the pill.
You indicated that you would not even think about placing a pill
inside a locker since the officer searches your cell and locker
every couple of weeks.  You also indicated that you did not have any
problems in the general population and you knew of no reason why
someone would set you up.  You indicated that the pills' color
(brown) proved it was in the locker for  a long time, possibly
years.  You stated that you are working in Unicor and are in GED
class.

C.  Witnesses:
1.  The inmate requested witnesses?  Yes.
2.  The following people were called as witnesses and appeared:

    POLANCO, MIGUEL #28447-054

3.  A summary of the testimony of each witness follows:  Yes.

    Witness Statement(s):

    POLANCO, MIGUEL #28447-054

    Inmate Polanco indicated that the officer checked the room
    several weeks ago.  Inmate Polanco stated that he did not
    believe the pill belonged to you.  He stated that he has
    been your room mate for twenty months and he has never known
    you to be involved with drugs.

4.  The following persons requested were not called for the reasons
    given:  N.A.

5.  Unavailable witnesses were requested to submit written statements
    and those statements received were considered:  N/A.

D.  Documentary Evidence:  In addition to the Incident Report and
    Investigation, the DHC considered the following documents:

    Memorandum dated 3/16/99 from R. Womeldorf, SIS Lieutenant,
    Memorandum dated 3/2/99 from G. Danison, Correctional Officer,
    Memorandum dated 3/2/99 from Y. Lantz, R.N.

GARCIA          42994-054          663535          03/25/99          page 3

E.  Confidential Information:  No confidential information was used.

---

IV.  <u>FINDINGS OF THE DHO</u>

Act(s) was(were) committed as charged.

---

V.  <u>SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS</u> (Physical evidence, observations, written documentation, etc.):

The DHO found that on or about 9:20 p.m. on 3/2/99 staff found in your secured locker a pill which contained narcotics 'codeine'. The incident occurred in Unit 3A at FCI Allenwood.

As evidence, the DHO used the written statement of the reporting officer who indicated on 3/2/99 at approximately 9:20 p.m., the reporting officer received a brown tablet shaped substance measuring approximately 1/2" wide from the Compound Officer J. Hill.  The small amount of the substance was placed in a test kit "B" (Lot #2402) and tested positive for heroin by returning a yellow to light green result in the test kit.  The substance was found by Officer Danison concealed inside your secured locker. The reporting officer indicated that the locker was in Cell #109 of Unit 3A.  The reporting officer indicated that a review of your medical records by Y. Lantz, R.N. indicated that you have no medicines prescribed.  The DHO considered the memorandum of G. Danison, Correctional Officer who indicated on 3/2/99 he entered Cell #109 to conduct an area search.  He unlocked the locked locker with a key on his key ring. The locker was located by the door of the cell.  Officer Danison indicated that he then felt with his fingers along the inside lip above the door of the locker.  As he was feeling across the lip he felt a small lump. He pulled the lump out of the locker to exam it. He indicated that it looked like a brown pill.  He then positively identified the locker by the contents of the locker as being yours: Officer Danison indicated that he wasn't sure what the pill like substance was so he called the Lieutenant's Officer and Officer Hill picked up the substance at 9:00 p.m.  At 9:30 p.m., Acting Lieutenant Flewelling said that a field test of the substance had positively identified as being heroin.  The DHO also considered the memorandum of R. Womeldorf, SIS Lieutenant who indicated that the pill was tested with a test "B" kit which determines if the substance had an opiate's composition.  Lt. Womeldorf indicated that the test was positive but it was misinterpreted as heroin being found.  Although the incident report was written to reflect the drug heroin, he indicated that it should be noted that the pill is prescribed medication with a codeine base composition. The reporting officer indicated that the medication was not prescribed to you by the Medical Department or an outside Medical Doctor.  The DHO also considered the memorandum of Y. Lantz, R.N. who indicated that your medical file was reviewed and that you have not been prescribed any narcotic medication.  The DHO considered your statement that you didn't have any knowledge that the pill was in your locker.

GARCIA          42994-054          663535          03/25/99          page 4

However, the DHO noted that the pill was found in your secured
locker.  Program Statement 5270.7, Inmate Discipline in Special
Housing Units, Chapter 3, Page 1, Item 4, states that it is your
responsibility to keep your area free on contraband.  Even though
you indicated that your were not aware the pill was in the locker,
the DHO noted that you had easy access to the pill and it was
considered within your domain.  The DHO considered your statement
that sine the pill was brown, it was in your locker for years.
However, the DHO determined that the color of the pill could not
indicate the length of time the pill was in the locker.

Therefore, after reviewing the evidence the DHO determined you
committed the prohibited act of Possession of Narcotics, Code 113.

---

VI.   <u>SANCTION OR ACTION TAKEN</u>                    Offense Severity: G
                                                         SGT Available: 0

      Code #113

            Disallow good conduct time
              Days Taken: 41.  Days Taken if Available:  41
            Disciplinary segregation:  60 days
            Loss of privilege (VISITING):  365 days

      The DHO disallowed good conduct time under Law PLRA, Comp. 010.

---

VII.  <u>REASON FOR SANCTION OR ACTION TAKEN</u>

      Use of narcotics in a Correctional Institution could jeopardize the
      safety of inmates/staff.  Experience has shown that inmates under
      the influence of narcotics have a propensity for violence and
      thereby jeopardize the safety of inmates/staff.  Sanctions were
      imposed for punishment and to deter future behavior of this type by
      you and other inmates.  Loss of Visiting Privileges was imposed as
      the DHO believes this sanction will have a significant impact on
      improving your behavior.  Experience has also shown that narcotics
      are introduced into an institution through visiting.

---

VIII. <u>APPEAL RIGHTS:</u> Yes. The inmate has been advised of the findings, specific
      evidence relied on, action and reasons for the action.  The inmate has
      been advised of his right to appeal this action within 20 calendar days
      following receipt of the DHO report under the Administrative Remedy
      Procedure.  A copy of this report has been given to the inmate.

GARCIA                42994-054              663535              03/25/99              page 5

IX.   DISCIPLINE HEARING OFFICER

ROBERT ZIMANY
Printed Name                        Signature                                    Date 4/1/99

Delivered to Inmate: _____  4/1/99
                          Staff Signature                      Date

U.S. Department of Justice                    CHECKLIST FOR DHO ACTION
Federal Bureau of Prisons            Incident Report Number:  66353

INMATE: GARCIA, ANTONIO                           REG. NO: 42994-05
INSTITUTION: FCI Allenwood (Med)            INCIDENT DATE:  03/02/9
                                            HEARING DATE:   03/25/9

RESPONSE:                          CATEGORY

YES  NO  N/A       I.  ADVANCE NOTICE OF CHARGE

___  ___  ___        (1) The inmate was given advance written notice of the
                     charge(s) against him on 03/03/99  (date) at 17:30
                     (hour), which was more than 24 hours before the inmate's
                     appearance before the DHO.
___  ___  ___        (2) If the answer to #1 is no, because there was less
                     than 24 hours advance notice, the inmate waived the
                     24-hour notice (___), or was to be released in less
                     than 24 hours (___).

                  II.  APPEARANCE

___  ___  ___        (3) The inmate appeared at the hearing.  If no, the
                     reason was:
                     _____

                  III.  STAFF REPRESENTATION

___  ___  ___        (4) The inmate requested a staff representative and
                     that staff representative appeared.  The representative
                     had a copy of 'DUTIES OF STAFF REPRESENTATIVE,' and
                     indicated an understanding of those duties.
___  ___  ___        (5) The inmate did not request a Staff Representative
                     and thereby waived the right to staff representation.
                     (6) The inmate requested a representative who refused
                     or was unable to appear, and the inmate chose to
                     continue the hearing in the absence of the requested
                     representative after being advised of the option to
                     postpone the hearing in order to obtain another representative
                     Because of staff declinations to appear, _____
                     _____ was appointed to represent
                     the inmate and appeared on the inmate's behalf.

                  IV.  WITNESSES AND DOCUMENTARY EVIDENCE

___  ___  ___        (7) The inmate waived the right to call witnesses.
___  ___  ___        (8) The inmate requested witnesses.
___  ___  ___           A. The requested witnesses appeared & statements
                        are summarized in the record.
                        B. Reasons for not calling the witnesses are docu-
                        mented in the record (i.e., repetitive or
                        adverse witnesses if their knowledge is adequately
                        summarized in the incident report or other
                        investigative materials supplied to the DHO).
___  ___  ___           C. Written statements of unavailable witnesses were
                        submitted, were considered, and are included in
                        the record.

INMATE: GARCIA, ANTONIO                    REG. NO.    42994-054
YES  NO  N/A

___ ___✓___ ___    (9) The inmate submitted written documentation which was
considered by the DHO.  If yes, list here the documents:

___✓___ ___ ___    (10) The inmate's statement to the DHO is summarized in
the record.  If no, it is because ( ) the inmate declined
to make a statement or ( ) _____

## V. USE OF CONFIDENTIAL INFORMANT INFORMATION

___ ___✓___ ___    (11) Confidential informant information that might
identify the confidential informant was considered
by the DHO and this information was not provided to
the inmate but is documented in a separate record.
The confidential informant(s) has/have been determined
to be reliable because: N/A

## VI. FINDINGS AND SPECIFIC EVIDENCE

✓___ ___ ___    (12) The findings of the DHO are supported by some facts.
If there was conflicting evidence, the findings are sup-
ported by the more credible evidence.
✓___ ___ ___    (13) There is some evidence to support each finding &
conclusion.
✓___ ___ ___    (14) The specific evidence relied on is adequately docu-
mented in the record with specific evidence and facts
cited (physical evidence, observations, written docu-
mentation, etc).

## VII. SANCTIONS

✓___ ___ ___    (15) The sanction imposed is proportionate to the offense
committed.
✓___ ___ ___    (16) The sanction imposed is authorized by the offense
severity, which is:  G
✓___ ___ ___    (17) The reasons for the sanction are adequately documented
in the record of the hearing, or in a separate report.

## VIII. OTHER

This section should be used for unusual aspects of the case, such as
inmate competency, UDC proceedings, DHO disqualification issues,  or
Special Housing Unit questions.  _____

_____

_____

_____

THIS CHECKLIST WAS COMPLETED BY DHO:  ROBERT ZIMANY
                                                    (print or type)
SIGNATURE OF THE DHO:  _____

PLACE OF THE DHO HEARING: FCI Allenwood (Med)

# EXHIBIT

# 2

CHAPTER 4
PROHIBITED ACTS AND DISCIPLINARY SEVERITY SCALE

1. [PROHIBITED ACTS AND DISCIPLINARY SCALE §541.13

a. There are four categories of prohibited acts - Greatest, High, Moderate, and Low Moderate (see Table 3 for identification of the prohibited acts within each category). Specific sanctions are authorized for each category (see Table 4 for a discussion of each sanction). Imposition of a sanction requires that the inmate first is found to have committed prohibited act.]

Table 3 begins on Page 4, Table 4 on Page 15 of this Chapter.

[(1) Greatest Category Offenses. The Discipline Hearing Officer (DHO) shall impose and execute one or more of sanctions A through E. Sanction B.1 must be imposed for a VCCLEA inmate rated as violent (i.e., an inmate who, as specified in the Violent Crime Control and Law Enforcement Act of 1994, committed a crime of violence on or after September 13, 1994) and for a PLRA inmate (i.e, an inmate who has been sentenced for an offense committed on or after April 26, 1996). The DHO may impose and execute sanction F and/or G only in addition to execution of one or more additional sanctions A through G.

(2) High Category Offenses. The Discipline Hearing Officer shall impose and execute one or more of sanctions A through M, and, except as noted in the santion, may also suspend one or more additional sanctions A through M. Sanction B.1 must be imposed for a VCCLEA inmate rated as violent and for a PLRA inmate. The Unit Discipline Committee shall impose and execute one or more of sanctions G through M, and may also suspend one or more additional sanctions G through M. Sanction B.1 must be imposed for a VCCLEA inmate rated as violent and for a PLRA inmate. The Unit Discipline Committee shall impose and execute one or more of sanctions G through M, except for a VCCLEA inmate rated as violent. All high category offense charges for a VCCLEA inmate rated as violent and for a PLRA inmate must be referred to the DHO.

(3) Moderate Category Offenses. The Discipline Hearing Officer shall impose at least one sanction A through N, but, except as noted in the sanction, may suspend any sanction or sanctions imposed. Sanction B.1 ordinarily must be imposed for a VCCLEA inmate rated as violent and for a PLRA inmate. Except for charges referred to the DHO, the Unit Discipline Committee (UDC) shall impose at least one sanction G through N, but may suspend any sanction or sanctions imposed. The UDC ordinarily shall refer to the DHO a moderate category charge for a VCCLEA inmate rated as violent or for a PLRA inmate if the inmate had been found to have committed a moderate category offense during the inmate's current anniversary year. (i.e., the twelve month period of time

for which an inmate may be eligible to earn good conduct time).
The UDC must thoroughly document in writing the reasons why the
charge for such an inmate was not referred to the DHO.

(4)  Low Moderate Category Offenses.  The Discipline Hearing
Officer shall impose at least one sanction B.1, or E through P.
The Discipline Hearing Officer may suspend any E through P
sanction or sanctions imposed (a B.1 sanction may not be
suspended).  Except for charges referred to the DHO, the Unit
Discipline Committee shall impose at least one sanction G through
P, but may suspend any sanction or sanctions imposed.  The UDC
ordinarily shall refer to the DHO a low moderate category charge
for a VCCLEA inmate rated as violent or for a PLRA inmate if the
inmate had been found to have committed two low moderate category
offense during the inmates current anniversary year (i.e, the
twelve month period of time for which an inmate may be eligible
to earn good conduct time).  The UDC must thoroughly document in
writing the reasons why the charge for such an inmate was not
referred to the DHO.

b.  Aiding another person to commit any of these offenses,
attempting to commit any of these offenses, and making plans to
commit any of these offenses, in all categories of severity,
shall be considered the same as a commission of the offense
itself.  In these cases, the letter "A" is combined with the
offense code.  For example, planning an escape would be
considered as Escape and coded 102A.  Likewise, attempting the
adulteration of any food or drink would be coded 209A.

c.  Suspensions of any sanction cannot exceed six months.
Revocation and execution of a suspended sanction require that the
inmate first is found to have committed any subsequent prohibited
act.  Only the Discipline Hearing Officer (DHO) may execute,
suspend, or revoke and execute suspension of sanctions A through
F.  The Discipline Hearing Officer (DHO) or Unit Discipline
Committee (UDC) may execute, suspend, or revoke and execute
suspensions of sanctions G through P.  Revocations and execution
of suspensions may be made only at the level (DHO or UDC) which
originally imposed the sanction.  The DHO now has that authority
for suspensions which were earlier imposed by the Inmate
Discipline Committee (IDC).]

When an inmate receives an Incident Report while on a DHO
imposed, but suspended sanction, the new Incident Report is to be
forwarded by the UDC to the DHO both for a final disposition on
the new Incident Report, and for a disposition on the suspended
sanction.  This procedure is not necessary when the UDC
informally resolves the new Incident Report.

[d.  If the Unit Discipline Committee has previously imposed a suspended sanction and subsequently refers a case to the Discipline Hearing Officer, the referral shall include an advisement to the DHO of any intent to revoke that suspension if the DHO finds that the prohibited act was committed.  If the DHO then finds that the prohibited act was committed, the DHO shall so advise the Unit Discipline Committee who may then revoke the previous suspension.

e.  The Unit Discipline Committee or Discipline Hearing Officer may impose increased sanctions for repeated, frequent offenses according to the guidelines presented in Table 5.]

Table 5 is on Page 22 of this Chapter.

[f. Sanctions by severity of prohibited act, with eligibility for restoration of forfeited and withheld statutory good time are presented in Table 6.]

Table 6 contains a chart showing the maximum amount of good time that may be forfeited or withheld and the period of time that must pass before an inmate is eligible for restoration of statutory good time. The chart also shows the maximum amount of time that an inmate may spend in disciplinary segregation.  The time frame established in each of these areas is determined by the severity of the prohibited act.

Case 1:00-cv-00803-YK-DB    Document 4    Filed 07/17/2000    Page 14 of 63

[TABLE 3 - PROHIBITED ACTS AND DISCIPLINARY SEVERITY SCALE

GREATEST CATEGORY

The UDC shall refer all Greatest Severity Prohibited Acts to the DHO with recommendations as to an appropriate disposition.

| CODE | PROHIBITED ACTS | | SANCTIONS |
|------|-----------------|---|-----------|
| 100 | Killing | A. | Recommend parole date rescission or retardation. |
| 101 | Assaulting any person (includes sexual assault) or an armed assault on the institution's secure perimeter (a charge for assaulting any person at this level is to be used only when serious physical injury has been attempted or carried out by an inmate) | B. | Forfeit earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended). |
| 102 | Escape from escort; escape from a secure institution (low, medium, and high security level and administrative institutions); or escape from a minimum institution <u>with</u> violence | B.1 | Disallow ordinarily between 50 and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended). |
| | | C. | Disciplinary Transfer (recommend). |
| 103 | Setting a fire (charged with this act in this category only when found to pose a threat to life or a threat of serious bodily harm or in furtherance of a prohibited act of Greatest Severity, e.g. in furtherance of a riot or escape; otherwise the charge is properly classified Code 218, or 329) | D. | Disciplinary segregation (up to 60 days). |
| | | E. | Make monetary restitution. |
| | | F. | Withhold statutory good time (Note - can be in addition to A through E - cannot be the only sanction executed). |
| | | G. | Loss of privileges (Note - can be in addition to A through E - cannot be the only sanction executed).] |

Case 1:00-cv-00803-YK-DB    Document 4    Filed 07/17/2000    Page 15 of 63

[TABLE 3 (Cont'd)
GREATEST CATEGORY (Cont'd)

| CODE | PROHIBITED ACTS | SANCTIONS |
|------|-----------------|-----------|
| 104 | Possession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive or any ammunition | Sanctions A-G] |
| 105 | Rioting | |
| 106 | Encouraging others to riot | |
| 107 | Taking hostage(s) | |
| 108 | Possession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade) | |
| 109 | (Not to be used) | |
| 110 | Refusing to provide a urine sample or to take part in other drug-abuse testing | |
| 111 | Introduction of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff | |
| 112 | Use of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff | |
| 113 | Possession of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff | |

PS 5270.07
CN-08 9/29/97
Chapter 4, Page 6

[TABLE 3 (Cont'd)
GREATEST CATEGORY (Cont'd)

| CODE | PROHIBITED ACTS | SANCTIONS |
|------|-----------------|-----------|
| 198 | Interfering with a staff member in the performance of duties. (<u>Conduct must be of the Greatest Severity nature</u>.) This charge is to be used only when another charge of greatest severity is not applicable. | Sanctions A-G] |
| 199 | Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons. (<u>Conduct must be of the Greatest Severity nature</u>.) This charge is to be used only when another charge of greatest severity is not applicable. | |

[TABLE 3 (Cont'd)
HIGH CATEGORY

| CODE | PROHIBITED ACTS | | SANCTIONS |
|------|-----------------|---|-----------|
| 200 | Escape from unescorted Community Programs and activities and Open Institutions (minimum) and from outside secure institutions--without violence. | A. | Recommend parole date rescission or retardation. |
| | | B. | Forfeit earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended) |
| 201 | Fighting with another person | | |
| 202 | (Note to be used) | | |
| 203 | Threatening another with bodily harm or any other offense | | |
| 204 | Extortion, blackmail, protection: Demanding or receiving money or anything of value in return for protection against others, to avoid bodily harm, or under threat of informing | B.1 | Disallow ordinarily between 25 and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended). |
| 205 | Engaging in sexual acts | | |
| 206 | Making sexual proposals or threats to another | C. | Disciplinary Transfer (recommend). |
| 207 | Wearing a disguise or a mask | D. | Disciplinary segregation (up to 30 days). |
| 208 | Possession of any unauthorized locking device, or lock pick, or tampering with or blocking any lock device (includes keys), or destroying, altering, interfering with, improperly using, or damaging any security device, mechanism, or procedure | E. | Make monetary restitution. |
| | | F. | Withhold statutory good time] |

[TABLE 3 (Cont'd)
HIGH CATEGORY (Cont'd)

| CODE | PROHIBITED ACTS | SANCTIONS | |
|------|-----------------|-----------|---|
| 209 | Adulteration of any food or drink | G. | Loss of privileges: commissary, movies, recreation, etc. |
| 210 | (Not to be used) | | |
| 211 | Possessing any officer's or staff clothing | | |
| 212 | Engaging in, or encouraging a group demonstration | H. | Change housing (quarters) |
| 213 | Encouraging others to refuse to work, or to participate in a work stoppage | I. | Remove from program and/or group activity |
| 214 | (Not to be used) | J. | Loss of job |
| 215 | Introduction of alcohol into BOP facility | K. | Impound inmate's personal property |
| 216 | Giving or offering an official or staff member a bribe, or anything of value | L. | Confiscate contraband |
| 217 | Giving money to, or receiving money from, any person for purposes of introducing contraband or for any other illegal or prohibited purposes | M. | Restrict to quarters] |
| 218 | Destroying, altering, or damaging government property, or the property of another person, having a value in excess of $100.00 or destroying, altering, damaging life-safety devices (e.g., fire alarm) regardless of financial value | | |
| 219 | Stealing (theft; this includes data obtained through the unauthorized use of a communications facility, or through the unauthorized access to disks, tapes, or computer printouts or other automated equipment on which data is stored.) | | |

[TABLE 3 (Cont'd)
HIGH CATEGORY (Cont'd)

| CODE | PROHIBITED ACTS | SANCTIONS |
|------|-----------------|-----------|
| 220 | Demonstrating, practicing, or using martial arts, boxing (except for use of a punching bag), wrestling, or other forms of physical encounter, or military exercises or drill (except for drill authorized and conducted by staff) | Sanctions A-M] |
| 221 | Being in an unauthorized area with a person of the opposite sex without staff permission | |
| 222 | Making, possessing, or using intoxicants | |
| 223 | Refusing to breathe into a breathalyser or take part in other testing for use of alcohol | |
| 224 | Assaulting any person (charged with this act only when less serious physical injury or contact has been attempted or carried out by an inmate) | |
| 298 | Interfering with a staff member in the performance of duties.  (Conduct must be of the High Severity nature.) This charge is to be used only when another charge of the high severity is not applicable. | |
| 299 | Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons. (Conduct must be of the High Severity nature.)  This charge is to be used only when another charge of high severity is not applicable. | |

Case 1:00-cv-00803-YK-DB    Document 4    Filed 07/17/2000    Page 20 of 63



[TABLE 3 (Cont'd)
MODERATE CATEGORY

| CODE | PROHIBITED ACTS | SANCTIONS | |
|------|-----------------|-----------|---|
| 300 | Indecent Exposure | A. | Recommend parole date rescission or retardation. |
| 301 | (Not to be used) | | |
| 302 | Misuse of authorized medication | B. | Forfeit earned statutory good time or non-vested good conduct time up to 25% or up to 30 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended). |
| 303 | Possession of money or currency, unless specifically authorized, or in excess of the amount authorized | | |
| 304 | Loaning of property or anything of valve for profit or increased return | | |
| 305 | Possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels | | |
| 306 | Refusing to work, or to accept a program assignment | B.1 | Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended). |
| 307 | Refusing to obey an order of any staff member (May be categorized and charged in terms of greater severity, according to the nature of the order being disobeyed; e.g., failure to obey an order which furthers a riot would be charged as 105, Rioting; refusing to obey an order which furthers a fight would be charged as 201, Fighting; refusing to provide a urine sample when ordered would be charged as Code 110) | C. | Disciplinary Transfer (recommend). |
| | | D. | Disciplinary segregation (up to 15 days). |
| 308 | Violating a condition of a furlough | | |
| 309 | Violating a condition of a community program | E. | Make monetary restitution. |
| 310 | Unexcused absence from work or any assignment | F. | Withhold statutory good time.] |

[TABLE 3 (Cont'd)
MODERATE CATEGORY (Cont'd)

| CODE | PROHIBITED ACTS | SANCTIONS |
|------|-----------------|-----------|
| 311 | Failing to perform work as instructed by the supervisor | G. Loss of privileges: commissary, movies, recreation, etc. |
| 312 | Insolence towards a staff member | |
| 313 | Lying or providing a false statement to a staff member. | |
| 314 | Counterfeiting, forging or unauthorized reproduction of any document, article of identification, money, security, or official paper. (May be categorized in terms of greater severity according to the nature of the item being reproduced; e.g., counterfeiting release papers to effect escape, Code 102 or Code 200) | H. Change housing (quarters). I. Remove from program and/or group activity. J. Loss of job. K. Impound inmate's personal property. |
| 315 | Participating in an unauthorized meeting or gathering | L. Confiscate contraband. |
| 316 | Being in an unauthorized area | M. Restrict to quarters. |
| 317 | Failure to follow safety or sanitation regulations | N. Extra duty.] |
| 318 | Using any equipment or machinery which is not specifically authorized | |
| 319 | Using any equipment or machinery contrary to instructions or posted safety standards | |
| 320 | Failing to stand count | |
| 321 | Interfering with the taking of count | |
| 322 | (Not to be used) | |
| 323 | (Not to be used) | |
| 324 | Gambling | |

Case 1:00-cv-00803-YK-DB    Document 4    Filed 07/17/2000    Page 22 of 63

[TABLE 3 (Cont'd)
MODERATE CATEGORY (Cont'd)

| CODE | PROHIBITED ACTS | SANCTIONS |
|------|-----------------|-----------|
| 325 | Preparing or conducting a gambling pool | Sanctions A-N] |
| 326 | Possession of gambling paraphernalia | |
| 327 | Unauthorized contacts with the public | |
| 328 | Giving money or anything of value to, or accepting money or anything of value from: another inmate, or any other person without staff authorization | |
| 329 | Destroying, altering or damaging government property, or the property of another person, having a value of $100.00 or less | |
| 330 | Being unsanitary or untidy; failing to keep one's person and one's quarters in accordance with posted standards | |
| 331 | Possession, manufacture, or introduction of a non-hazardous tool or other non-hazardous contraband (Tool not likely to be used in an escape or escape attempt, or to serve as a weapon capable of doing serious bodily harm to others, or not hazardous to institutional security or personal safety; Other non-hazardous contraband includes such items as food or cosmetics) | |
| 398 | Interfering with a staff member in the performance of duties.  (Conduct must be of the Moderate Severity nature.)   This charge is to be used only when another charge of moderate severity is not applicable. | |
| 399 | Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons. (Conduct must be of the Moderate Severity nature).  This charge is to be used only when another charge of moderate severity is not applicable. | |

[TABLE 3 (Cont'd)
LOW MODERATE CATEGORY

| CODE | PROHIBITED ACTS | SANCTIONS | |
|------|-----------------|-----------|--|
| 400 | Possession of property belonging to another person | B.1 | Disallow ordinarily up to 12.5% (1-7 days) of good conduct time credit available for year (to be used only where inmate found to have committed a second violation of the same prohibited act within 6 months); Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (to be used only where inmate found to have committed a third violation of the same prohibited act within 6 months) (a good conduct time sanction may not be suspended).] (See Chapter 4 Page 16 for VCCLEA violent and PLRA inmates.) |
| 401 | Possessing unauthorized amount of otherwise authorized clothing | | |
| 402 | Malingering, feigning illness | | |
| 403 | Smoking where prohibited | | |
| 404 | Using abusive or obscene language | | |
| 405 | Tattooing or self-mutilation | | |
| 406 | Unauthorized use of mail or telephone (Restriction, or loss for a specific period of time, of these privileges may often be an appropriate sanction G)(May be categorized and charged in terms of greater severity, according to the nature of the unauthorized use; e.g., the telephone is used for planning, facilitating, committing an armed assault on the institution's secure perimeter, would be charged as Code 101, Assault) | | |
| | | [E. | Make monetary restitution. |
| | | F. | Withhold statutory good time. |
| 407 | Conduct with a visitor in violation of Bureau regulations (Restriction, or loss for a specific period of time, of these privileges may often be an appropriate sanction G) | G. | Loss of privileges: commissary, movies, recreation, etc. |
| | | H. | Change housing (quarters). |
| | | I. | Remove from program and/or group activity.] |



PS 5270.07
CN-08 9/29/97
Chapter 4, Page 14

[TABLE 3   (Cont'd)
LOW MODERATE CATEGORY (Cont'd)

| CODE | PROHIBITED ACTS | SANCTIONS | |
|------|-----------------|-----------|---|
| 408 | Conducting a business | J. | Loss of job. |
| 409 | Unauthorized physical contact (e.g., kissing, embracing) | K. | Impound inmate's personal property. |
| 498 | Interfering with a staff member in the performance of duties. <u>Conduct must be of the Low Moderate Severity nature.</u>)  This charge is to be used only when another charge of low moderate severity if not applicable. | L. | Confiscate contraband. |
| | | M. | Restrict to quarters. |
| | | N. | Extra duty. |
| 499 | Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons. <u>(Conduct must be of the Low Moderate severity nature.</u>) This charge is to be used only when another charge of low moderate severity is not applicable. | O. | Reprimand. |
| | | P. | Warning. |

<u>NOTE</u>:  <u>Aiding</u> another person to commit any of these offenses, <u>attempting</u> to commit any of these offenses, <u>and making plans</u> to commit any of these offenses, in all categories of severity, shall be considered the same as a commission of the offenses itself.]

When the prohibited act is interfering with a staff member in the performance of duties (Code 198, 298, 398, or 498), or Conduct Which Disrupts (Code 199, 299, 399, or 499), the DHO or UDC, in its findings, should indicate a specific finding of the severity level of the conduct, and a comparison to an offense (or offenses) in that severity level which the DHO or UDC finds is most comparable.

<u>Example</u>: "We find the act of _____ to be of High severity, most comparable to prohibited act Engaging in a Group Demonstration."

Sanction B.1 may be imposed on the Low Moderate category <u>only</u> where the inmate has committed the same low moderate prohibited act more than one time within a six-month period except for a VCCLEA inmate rated as violent or a PLRA inmate (See Chapter 4, Page 16).

Case 1:00-cv-00803-YK-DB    Document 4    Filed 07/17/2000    Page 26 of 63

[TABLE 4 - SANCTIONS

1. <u>Sanctions of the Discipline Hearing Officer</u>: (upon finding the inmate committed the prohibited act)

A. <u>Recommend Parole Date Rescission or Retardation</u>. The DHO may make recommendations to the U.S. Parole Commission for retardation or rescission of parole grants. This may require holding fact-findings hearings upon request of or for the use of the Commission.

B. <u>Forfeit Earned Statutory Good Time, Non-vested Good Conduct Time, and/or Terminate or Disallow Extra Good Time</u>. The statutory good time available for forfeiture is limited to an amount computed by multiplying the number of months served at the time of the offense for which forfeiture action is taken, by the applicable monthly rate specified in 18 U.S.C. § 4161 (less any previous forfeiture or withholding outstanding). The amount of good conduct time (GCT) available for forfeiture is limited to the total number of days in the "non-vested" status at the time of the misconduct (less any previous forfeiture). A forfeiture of good conduct time sanction may not be suspended. Disallowance of extra good time is limited to the extra good time for the calendar month in which the violation occurs. It may not be withheld or restored. The sanction of termination or disallowance of extra good time may not be suspended. Forfeited good conduct time will not be restored. Authority to restore forfeited statutory good time is delegated to the Warden. This decision may not be delegated lower than the Associate Warden level. Limitations on this sanction and eligibility for restoration are based on the severity scale. (See Table 6)]

See Page 19 of this Chapter for limitations on this sanction and for eligibility for restoration. Good time (statutory and good conduct time) percentages may be combined when separate acts or offenses occur on the same day and are heard by the DHO at the same time. For example, when an inmate is charged, and found to have committed, both a 200 and 300 Code violation by the same sitting DHO, that DHO may forfeit 75% of the inmate's good time (50% for the 200 code violation, 25% for the 300 Code violation). Good time may not be forfeited (because it is not earned) for an inmate solely in service of a civil contempt. See the Sentence Computation Manual (Old Law, Pre-CCCA-1984) for a discussion of termination or disallowance of extra good time.

An application for restoration of good time is to go from the inmate's unit team, through both the DHO and Captain for comments, to the Warden or his or her delegated representative for final decision.

This sanction B does not apply to inmates committed under the provisions of the Comprehensive Crime Control Act for crimes

[TABLE 4 - SANCTIONS (Cont'd)

committed on or after November 1, 1987 and prior to passage of
the Violent Crime Control and Law Enforcement Act of 1994
(September 23, 1994). For those inmates, the applicable sanction
is B.1.

[B.1  **Disallowance of Good Conduct Time**.  An inmate sentenced
under the Sentencing Reform Act provisions of the Comprehensive
Crime Control Act (includes the inmate who committed his or her
crime on or after November 1, 1987) may not receive statutory
good time, but is eligible to receive 54 days good conduct time
credit each year (18 U.S.C. § 3624(b)).  Once awarded, the credit
is vested, and may not be disallowed.  However for crimes
committed on or after September 13, 1994 and prior to April 26,
1996, credit toward an inmate's service of sentence shall not be
vested unless the inmate has earned or is making satisfactory
progress toward a high school diploma or an equivalent degree, or
has been exempted from participation because of a learning
disability.  For crimes committed on or after April 26, 1996,
credit toward an inmate's service of sentence shall vest on the
date the inmate is released from custody.  Once disallowed, the
credit may not be restored, except by immediate review or appeal
action as indicated below.  Prior to this award being made, the
credit may be disallowed for an inmate found to have committed a
prohibited act.  A sanction of disallowance of good conduct time
may not be suspended.  Only the DHO can take action to disallow
good conduct time.  The DHO shall consider the severity of the
prohibited act and the suggested disallowance guidelines in
making a determination to disallow good conduct time.  A decision
to go above the guideline range is warranted for a greatly
aggravated offense or where there is a repetitive violation of
the same prohibited act that occurs within a relatively short
time frame (e.g., within 18 months for the same greatest severity
prohibited act, within 12 months for the same high severity
prohibited act, and within 6 months for the same moderate
severity prohibited act).  A decision to go below the guidelines
is warranted for strong mitigating factors.  Any decision outside
the suggested disallowance guidelines is to be documented and
justified in the DHO report.

VCCLEA inmates rated as violent and PLRA inmates will
ordinarily be disallowed good conduct time for each prohibited
act they are found to have committed at a DHO hearing, consistent
with the following;

    (1)  **Greatest Category Offenses**.  A minimum of 40 days (or,
    if less than 54 days are available for the prorated period,
    a minimum of 75% of available good time conduct) for each
    act committed;

    (2)  **High Category Offenses**.  A minimum of 27 days (or, if
    less than 54 days are available for the prorated period, a

[TABLE 4 - SANCTIONS (Cont'd)

minimum of 50% of available good conduct time) for each act
committed.

(3)  <u>Moderate Category Offenses</u>.  A minimum of 13 days (or,
if less than 54 days are available for the prorated period,
a minimum of 25% of available good conduct time) for each
act committed if the inmate has committed two or more
moderate category offenses during the current anniversary
period.

(4)  <u>Low Moderate Category Offenses</u>.  A minimum of 6 days
(or, if less than 54 days are available for the prorated
period, a minimum of 12.5% of available good conduct time)
for each act committed if the inmate has committed three or
more low moderate category offenses during the current
anniversary period.

However, the DHO may, after careful consideration of mitigating
factors (seriousness of the offense, the inmate's past
disciplinary record, the lack of available good conduct time,
etc.) choose to impose a lesser sanction, or even disallow no GCT
for moderate and low moderate prohibited acts by VCCLEA inmates
rated as violent or by PLRA inmates.  The DHO must thoroughly
detail the rationale for choosing to disallow less than 13 days
or 6 days respectively.  This will be documented in Section VII
of the DHO report.  Disallowance of amounts greater than 13 days
or 6 days respectively will occur with repetitive offenses
consistent with the guidelines in this B.1.

The decision of the DHO is final and is subject only to review
by the Warden to ensure conformity with the provisions of the
disciplinary policy and by inmate appeal through the
administrative remedy program.  The DHO is to ensure that the
inmate is notified that any appeal of a disallowance of good
conduct time must be made within the time frames established in
the Bureau's rule on administrative remedy procedures.

Except for VCCLEA inmates rated as violent or PLRA inmates,
Sanction B.1 may be imposed on the Low Moderate category <u>only</u>
where the inmate has committed the same low moderate prohibited
act more than one time within a six-month period.]

Good conduct time credit may only be given to an inmate serving
a sentence of more than one year, but less than the duration of
his life.  In the last year or portion of a year of an inmate's
sentence, only the amount of good conduct time credit available
for that remaining period of time may be disallowed.  The
Appendix to this Chapter 4 discusses procedures for the
disallowance of good conduct time.

[TABLE 4 (Cont'd)]

[C.  Recommend Disciplinary Transfer.  The DHO may recommend
that an inmate be transferred to another institution for
disciplinary reasons.

Where a present or impending emergency requires immediate
action, the Warden may recommend for approval of the Regional
Director the transfer of an inmate prior to either a UDC OR DHO
hearing.  Transfers for disciplinary reasons prior to a hearing
before the UDC or DHO may be used in emergency situations and
only with approval of the Regional Director.  When an inmate is
transferred under these circumstances, the sending institution
shall forward copies of incident reports and other relevant
materials with completed investigation to the receiving
institution's Discipline Hearing Officer.  The inmate shall
receive a hearing at the receiving institution as soon as
practicable under the circumstances to consider the factual basis
of the charge of misconduct and the reasons for the emergency
transfer.  All procedural requirements applicable to UDC or DHO
hearings contained in this rule are appropriate, except that
written statements of unavailable witnesses are liberally
accepted instead of live testimony.]

Transfers from one region to another require the approval of
both the sending and receiving Regional Directors.

The receiving institution does not need to hold a new UDC
hearing if such a hearing was held by the sending institution
prior to the inmate's transfer.

[D.  Disciplinary Segregation.  The DHO may direct that an
inmate be placed or retained in disciplinary segregation pursuant
to guidelines contained in this rule.  Consecutive disciplinary
segregation sanctions can be imposed and executed for inmates
charged with and found to have committed offenses that are part
of different acts only.  Specific limits on time in disciplinary
segregation are based on the severity scale.  (See Table 6)]

Separate sanctions may be imposed for separate acts or
offenses.  Acts are different or separate if they have different
elements to the offenses.  For example, if an inmate is involved
in a fight with another inmate, and in the course of subduing
that incident the inmate also strikes a staff member, the inmate
can be charged with fighting (Code 201) and also assaulting a
staff member (Code 101).  The inmate can be separately charged
and punished, on the basis of one Incident Report, or in two
separate Incident Reports, for each offense.  The inmate could
not be punished for both assault on and fighting with the inmate,
since the elements of both offenses (the time, place, persons
involved, actions performed) are essentially the same for both
offenses.  If, on the way to administrative detention, the inmate
starts another disturbance, and strikes another officer, the

[TABLE 4 (Cont'd)]

inmate could be charged with that as another assault offense. Similarly, an inmate serving a period of time in disciplinary segregation may commit a prohibited act there, and receive additional, consecutive time in segregation for that new offense.

See Table 6 for the specific limits on sanctions. Each different or separate offense should be written on a separate Incident Report. Unless otherwise specified by the DHO, disciplinary segregation placement for different or separate prohibited acts are to be imposed consecutively.

An inmate who has been recommended for a Control Unit placement may be transferred prior to completing the required segregation period. The remainder of any segregation period shall be served at the receiving institution.

Except as noted above, an inmate serving a sanction of disciplinary segregation ordinarily is not to be transferred from the institution imposing the sanction until completion of the segregation period. When this is not practical, the Regional Office must approve the transfer. The inmate shall complete the remainder of any segregation period at the receiving institution.

[E.   Make Monetary Restitution.  The DHO may direct that an inmate reimburse the U.S. Treasury for any damages to U.S. Government property that the individual is determined to have caused or contributed to.]

An inmate's commissary privileges may be suspended or limited until restitution is made. See the Accounting Management Manual for instructions regarding impoundment of inmate funds.

[F.   Withholding Statutory Good Time.  The DHO may direct that an inmate's good time be withheld. Withholding of good time should not be applied as a universal punishment to all persons in disciplinary segregation status. Withholding is limited to the total amount of good time creditable for the single month during which the violation occurs.

Some offenses, such as refusal to work at an assignment, may be recurring, thereby permitting, when ordered by the DHO, consecutive withholding actions. When this is the intent, the DHO shall specify at the time of the initial DHO hearing that good time may be withheld until the inmate elects to return to work. During the running of such a withholding order, the DHO shall review the offense with the inmate on a monthly basis. For an on-going offense, staff need not prepare a new Incident Report or conduct an investigation or initial hearing (UDC). The DHO shall provide the inmate an opportunity to appear in person and

[TABLE 4 (Cont'd)]

to present a statement orally or in writing.  The DHO shall
document its action on, or by an attachment to, the initial
Institution Discipline report.  If further withholding is
ordered, the DHO shall advise the inmate of the inmate's right to
appeal through the Administrative Remedy procedures (Part 542).

Only the Warden may restore withheld statutory good time.  This
decision may not be delegated lower than the Associate Warden
level.  Restoration eligibility is based on the severity scale.
(See Table 6)]

An application for restoration of good time must be forwarded
from the inmate's unit team, through both the DHO and Captain for
comments, to the Warden or his or her delegated representative
for final decision.

Part 542 refers to Program Statement on Administrative Remedy
Procedure for Inmates.  See Page 20 of this Chapter for
information on restoration eligibility.

This sanction F does not apply to inmates committed under the
provisions of the Comprehensive Crime Control Act.  This means
that inmates who committed their crimes on or after November 1,
1987, and who are sentenced under the Sentencing Reform Act
provisions of the Comprehensive Crime Control Act are only
eligible to receive 54 days good conduct time credit (18 U.S.C. §
3624(b)).  This credit is given at the end of each year of time
served and, once given, is vested.  For these inmates, the DHO's
authority is final and is subject only to review by the Warden to
ensure conformity with the provisions of the discipline policy
and by inmate appeal through the Administrative Remedy
procedures.

[2.  **Sanctions of the Discipline Hearing Officer/Unit Discipline
Committee**: (upon finding the inmate committed the prohibited act)

G.  **Loss of Privileges:**] Commissary, Movies, Recreation, etc.
[The DHO or UDC may direct that an inmate forego specific
privileges for a specified period of time.  Ordinarily, loss of
privileges is used as a sanction in response to an abuse of that
privilege.  However, the DHO or UDC may impose a loss of
privilege sanction not directly related to the offense when there
is a lack of other appropriate sanctions or when imposition of an
appropriate sanction previously has been ineffective.]

After careful consideration of all relevant facts, the UDC or
DHO may impose a loss of privilege sanction not directly related
to the offense, provided there is a belief that the imposed
sanction (e.g., loss of visiting privileges) is viewed as having
a significant impact on the inmate's future behavior.

Case 1:00-cv-00803-YK-DB    Document 4    Filed 07/17/2000    Page 32 of 63

Loss of recreation privileges cannot be imposed on inmates in Special Housing, but may be used as a sanction for general population inmates.

[H.  **Change Housing (Quarters)**.  The DHO or UDC may direct that an inmate be removed from current housing and placed in other housing.

I.  **Remove from Program and/or Group Activity**.  The DHO or UDC may direct that an inmate forego participating in any program or group activity for a specified period of time.

J.  **Loss of Job**.  The DHO or UDC may direct that an inmate be removed from present job and/or be assigned to another job.

K.  **Impound Inmate's Personal Property**.  The DHO or UDC may direct that an inmate's personal property be stored in the institution (when relevant to offense) for a specified period of time.

L.  **Confiscate Contraband**.  The DHO or UDC may direct that any contraband in the possession of an inmate be confiscated and disposed of appropriately.]

For procedures, see the Program Statement on Personal Property of Inmates.

[M.  **Restrict Quarters**.  The DHO or UDC may direct that an inmate be confined to quarters or in its immediate area for a specified period of time.

N.  **Extra Duty**.  The DHO or UDC may direct that an inmate perform tasks other than those performed during regularly assigned institutional job.

O.  **Reprimand**.  The DHO or UDC may reprimand an inmate either verbally or in writing.

P.  **Warning**.  The DHO or UDC may verbally warn an inmate regarding committing prohibited act(s).]

Note:  Although not considered sanctions, the UDC or DHO may recommend classification or program changes.  For example, the DHO may recommend an inmate's participation in, or removal from, a particular program.  When this occurs, a final decision will ordinarily be made in accordance with the established procedures for deciding that issue.  In the example cited above, a referral would be made to the inmate's unit team for a decision on the recommendation.

PS 5270.07
CN-08 9/29/97
Chapter 4, Page 22

[TABLE 5

SANCTIONS FOR REPETITION OF PROHIBITED ACTS WITHIN SAME CATEGORY

When the Unit Discipline Committee or DHO finds that an inmate
has committed a prohibited act in the Low Moderate, Moderate, or
High category, and when there has been a repetition of the same
offense(s) within recent months (offenses for violation of the
same code), increased sanctions are authorized to be imposed by
the DHO according to the following chart. (Note: An informal
resolution may not be considered as a prior offense for purposes
of this chart.)

| Category | Prior Offense (Same Code) Within Time Period | Frequency of Repeated Offense | Sanction Permitted |
|---|---|---|---|
| Low Moderate (400 Series) | 6 months | 2d offense | Low Moderate Sanctions plus<br>1. Disciplinary segregation, up to 7 days.<br><br>2. Forfeit earned SGT or non-vested GCT up to 10% or up to 15 days, whichever is less, and/or terminate or disallow extra good time (EGT) (an EGT sanction may not be suspended). |
| | | 3d offense, or more | Any sanctions available in Moderate (300) and Low Moderate (400) series. |
| Moderate (300 Series) | 12 months | 2d offense | Moderate Sanctions (A,C,E-N) plus<br><br>1. Disciplinary segregation, up to 21 days |

Case 1:00-cv-00803-YK-DB    Document 4    Filed 07/17/2000    Page 34 of 63



### [TABLE 5 (Cont'd)

| Category | Prior Offense (Same Code) Within Time Period | Frequency of Repeated Offense | Sanction Permitted |
|---|---|---|---|
| | | | 2.   Forfeit earned SGT or non-vested GCT up to 37 1/2% or up to 45 days, whichever is less, and/or terminate or disallow EGT (an EGT sanction may not be suspended). |
| | | 3d offense, or more | Any sanctions available in Moderate (300) and High (200) series. |
| High (200 Series) | 18 months | 2d offense | High Sanction (A,C,E-M), plus<br><br>1.   Disciplinary segregation, up to 45 days.<br><br>2.   Forfeit earned SGT or non-vested GCT up to 75% or up to 90 days, whichever is less, and/or terminate or disallow EGT (an EGT sanction may not be suspended). |
| | | 3d offense | Any sanction available in High or more (200) and Greatest (100) series.] |

PS 5270.07
CN-08 9/29/97
Chapter 4, Page 24

[TABLE 6

## SANCTIONS BY SEVERITY OF PROHIBITED ACT, WITH ELIGIBILITY FOR RESTORATION OF FORFEITED AND WITHHELD STATUTORY GOOD TIME

| Severity of Act | Sanctions | Max.Amt. Forf. GT1 | Max.Amt. W/hd SGT | Elig. Restoration Forf.SGT | Elig. Restoration W/hd/SGT | Max. Dis Seg1 |
|---|---|---|---|---|---|---|
| Greatest | A-F | 100% | Good time creditable for single month during which violation occurs. Applies to all categories. | 24 mos | 18 mos | 60 days |
| High | A-M | 50% or 60 days, whichever is less | | 18 mos | 12 mos | 30 days |
| Moderate | A-N | 25% or 30 days, whichever is less | | 12 mos | 6 mos | 15 days |
| ⌐w/Moderate | E-P | N/A | | N/A(1st offense) 6 mos.(2nd or 3rd offense in same category within six months) | 3 mos | N/A (1st offense) 7 days (2nd offense) 15 days (3rd offense)]* |

1 See Table 5, SANCTIONS FOR REPETITION OF PROHIBITED ACTS WITHIN SAME CATEGORY, on Page 22 of this Chapter. Forfeited good conduct time will not be restored ("GT" in Table 6 represents both good conduct and statutory good time.)

[NOTE: In Table 6 headings, "GT" represents both good conduct and statutory good time and "SGT" represents statutory good time. Forfeited good conduct time is not eligible for restoration. Restoration of statutory good time will be approved at the time of initial eligibility only when the inmate has shown a period of time with improved good behavior. When the Warden or his delegated representative denies restoration of forfeited or withheld statutory good time, the unit team shall notify the inmate of the reasons for denial. The unit team shall establish a new eligibility date, not to exceed six months from the date of denial.]

PS 5270.07
CN-08 9/29/97
Chapter 4, Page 25

### [TABLE 6 (Cont'd)]

To ensure an inmate's case is not overlooked when statutory good time has been forfeited or withheld, the unit team must review the eligibility requirements for restoration in accordance with the time frames established by the Program Statement on Classification and Program Review of Inmates.  A recommendation of the unit team, whether for or against restoration, must be forwarded (on BP-389/Record Form 84) to the Warden, through the DHO and Captain for disposition.  Except as noted below, eligibility for restoration of withheld or forfeited statutory good time is computed from the date of the withholding or forfeiture action by the DHO.  An inmate who has escaped and receives a forfeiture at a subsequent in absentia hearing begins the eligibility for restoration period upon return to custody of the Bureau of Prisons.  The Warden will refer for approval of the Regional Director a case where the Warden determines exceptional circumstances support restoration of statutory good time prior to completion of the eligibility requirements.

**[An inmate with an approaching parole effective date, or an approaching mandatory release or expiration date who has forfeited good time may be placed in a Community Treatment Center only if that inmate is otherwise eligible under Bureau policy, and if there exists a legitimate documented need for such placement.  The length of stay at the Community Treatment Center is to be held to the time necessary to establish residence and employment.]**

PS 5270.07
CN-08 9/29/97
Chapter 4, Appendix, Page 1

### DISALLOWANCE OF GOOD CONDUCT TIME

Sanctions B and F of the Prohibited Acts and Disciplinary
Severity Scale, pertain to statutory good time and do not apply
to inmates committed under the Sentencing Reform Act provisions
of the Comprehensive Crime Control Act.  This means that inmates
who committed their crimes on or after November 1, 1987 and who
are sentenced under the Sentencing Reform Act provisions of the
Comprehensive Crime Control Act are only eligible to receive 54
days per year of good conduct time credit (18 U.S.C. §3624(b)).
This credit is given at the end of each year of time served and,
once given, is vested.  Also, once disallowed it may not be
restored (except for procedural error, corrected on immediate
administrative review, or by appeal through the Administrative
Remedy procedures). Disallowance of good conduct time is to be
accomplished in accordance with the following procedures.

A. Only the DHO can take action to disallow good conduct time.
A UDC may recommend a disallowance to the DHO, but a UDC may not
independently disallow good conduct time.

B. In determining the amount of good conduct time to be
disallowed, the DHO should assess the seriousness of the
particular prohibited act.  Code violations of the greatest
severity ordinarily should have the greatest amount of lost good
conduct time credit.  However, even within the same severity
level, the DHO is to assess the severity of the offense and
impose lost good conduct time credit based on an assessment of
the particular violation.  Consideration of the inmate's VCCLEA
1994 Offense Category should be taken into consideration when
imposing sanctions. Those with a "VIOLENT" category offense
should receive greater disallowance sanctions. See Table 4
Section B.1 for specific minimum disallowance guidelines.

(1)  Except as indicated in paragraph (2) below, the DHO
should effect the loss of good conduct time pursuant to the
following table.

| | | |
|---|---|---|
| 100 Code | (Greatest Category) | Disallow ordinarily between 50 and 75% of good conduct time credit (27-41 days) available for year. |
| 200 Code | (High Category) | Disallow ordinarily between 25 and 50% of good conduct time credit (14-27 days) available for year. |
| 300 Code | (Moderate Category) | Disallow ordinarily up to 25% of good conduct time credit (1-14 days) available for year. |

PS 5270.07
CN-08 9/29/97
Chapter 4, Appendix, Page 2

400 Code (Low Moderate Category)  May disallow only for
repetitive acts.  For a second
violation of the same
prohibited act committed
within 6 months, the DHO may
disallow ordinarily up to
12.5% of the good conduct time
credit (1-7 days) available
for year; for a third
violation of the same
prohibited act committed
within 6 months, the DHO may
disallow ordinarily up to 25%
of the good conduct time
credit (1-14 days) available
for year.

(2)   The DHO may impose a sanction greater than or less than
the guidelines indicated in paragraph (1) of this section when
the available information clearly indicates such action is
warranted. The DHO is to indicate in the record of the hearing
the specific reasons for varying from the established guidelines.
Going above the guidelines is warranted for a greatly aggravated
offense or for repeated violations of the same prohibited act
that occurs within a relatively short time frame (e.g., within an
18-month period for the same greatest severity prohibited act,
within a 12-month period for the same high severity prohibited
act, and within a six-month period for the same moderate severity
prohibited act).  Going below the guidelines is also warranted
for strong mitigating factors.

C.  The decision of the DHO is final, and is subject only to
procedural review by the Warden and by appeal through the
Administrative Remedy procedures.  The DHO is to ensure that the
inmate is notified of the information contained in this paragraph
C.

D.  The DHO is to provide the Inmate Systems Manager (ISM) with
documentation of each good conduct time disallowance  (BP-448,
Good Conduct time Action Notice).

(1)  At the end of each year of an inmate's confinement, and
within the 15-day window provided by the statute for a
determination of an award of good conduct time, the ISM is to
determine the number of days disallowed by the DHO and, when
necessary, is to recalculate the inmate's sentence.  This
recalculation is based on the total amount of time disallowed, as
reported by DHO actions on offenses (prohibited acts) occurring
during the year.  The calculation should be made on DHO actions
near the end of the year, even if they are under administrative
review or appeal.  The records will be corrected (disallowance

reduced, for example) if ordered by the reviewing official. Until any such order, the action of the DHO is final and may be implemented in the inmate's sentence computation and all official records.

(2)   CCMs will perform the above computation for inmates in contract facilities.

(3)   Prior to making an award ISM staff should determine if there are unresolved (pending) incident reports that might result in a disallowance of GCT. If a pending report exists, the award decision should be deferred until resolution of that report.

(4)   If subsequent to an award, staff become aware of misconduct that occurred during the evaluation period, the awarded GCT will be available for disallowance following a finding by a DHO that a prohibited act occurred.  However, GCT cannot be disallowed for misconduct that occurred after the evaluation period.

E.   Questions concerning the disallowance of good conduct time credits are to be directed to the Regional Inmate Systems Administrator or to the Regional Counsel.

# EXHIBIT
# 3



UNITED STATES GOVERNMENT

# MEMORANDUM

FEDERAL CORRECTIONAL INSTITUTION
ALLENWOOD, PA.

DATE      :  March 16, 1999

REPLY TO
ATTN. OF:  R. Womeldorf, Lieutenant-SIS

SUBJECT :  Garcia, Antonio
           Reg. No. 42994-054

TO        :  R. Zimany, Discipline Hearing Officer


On March 2, 1999, the above referenced inmate was found to have
had a brown tablet, round in shape and in the form of a pill
secured in his locker in his assigned cell in Unit 3-A.  The
tablet was tested with the test kit "B" which determines if the
substance had an opiate's composition.  The test was positive but
it was misinterpreted as Heroin being found.  Although the
incident report was written to reflect the drug heroin, which is
incorrect, it should be noted this pill is prescribed medication
with a codeine base composition.  The inmate in this case is
properly charged with possession of a narcotic, which is the
medication not prescribed to him by our Medical Department or an
outside Medical Doctor.

# EXHIBIT
# 4

UNITED STATES GOVERNMENT

# MEMORANDUM

FEDERAL CORRECTIONAL INSTITUTION
ALLENWOOD, PA.


DATE     : 3-2-99

REPLY TO *Gary H. Danison S.O.S.*
ATTN. OF: Gary Danison S.O.S.

SUBJECT : Unknown substance found in area search

TO       : Lieutenants Office

RE       :


On Tuesday, 3-2-99 I entered cell # 109 to conduct an
area search.  I unlocked the locked locker with the key on my
key ring. This locker is located by the door of the cell.  I
then felt with my fingers along the inside lip above the door
of the locker. As I was feeling across the lip I felt  a small
lump.  I pulled the lump out of the locker to examine it. It
looked like a brown pill.  I then positively identified the
locker by the contents of the locker having inmate Garcia's
number #42994-054. I wasn't sure what the pill like substance
was so I called the Lt's office and Officer Hill picked up the
substance at 9:00 pm.  At 9:30 pm Acting Lt. Flewelling said that
a field test of the substance had positively identified it as being
heroin.

# EXHIBIT
# 5



UNITED STATES GOVERNMENT

# MEMORANDUM

FEDERAL CORRECTIONAL INSTITUTION
ALLENWOOD, PA

DATE: March 2 , 1999

REPLY TO
OF: Yvonne L. Lantz , RN    *Yvonne L. Lantz RN*

SUBJECT: Inmate Garcia # 42994 - 054
TO: Operations  LT

Per the Lt.s request - I pulled the above named inmates medical file to ascertain if the inmate had
been prescribed any narcotics. Upon reviewing the chart to one year ago it appears that the
inmate has NOT been prescribed any narcotic medication.

# EXHIBIT
# 6

U.S. Department of Justice
Federal Bureau of Prisons

**Incident Report**

| 1. NAME OF INSTITUTION | | | |
|---|---|---|---|
| FCI ALLENWOOD | | | |

### PART I – INCIDENT REPORT

| 2. NAME OF INMATE | 3. REGISTER NUMBER | 4. DATE OF INCIDENT | 5. TIME |
|---|---|---|---|
| GARCIA, ANTONIO | 42994-054 | 3-2-99 | 9:20 PM |

| 6. PLACE OF INCIDENT | 7. ASSIGNMENT | 8. UNIT |
|---|---|---|
| LT'S OFFICE, FCI ALLENWOOD | ASSEMBLY I | 3A |

| 9. INCIDENT | 10. CODE |
|---|---|
| POSSESSION OF NARCOTICS, OR RELATED PARAPHERNALIA NOT PRESCRIBED FOR THE INDIVIDUAL BY THE MEDICAL STAFF | 113 |

11. DESCRIPTION OF INCIDENT · Date: 3/2/99 Time: 9:20 pm (Staff became aware of incident)

ON 3-2-99 AT 9:20 PM THIS WRITER RECIEVED A BROWN, TABLET SHAPED, SUBSTANCE MEASURING APPROX. 1/2" WIDE FROM THE COMPOUND OFFICER J. HILL. A SMALL AMOUNT OF THE SUBSTANCE WAS PLACED IN A TEST KIT "B"(LOT NO. 2402) AND TESTED POSITIVE FOR HEROIN BY RETURNING A YELLOW TO LIGHT GREEN RESULT IN THE TEST KIT. THE SUBSTANCE WAS FOUND BY OFFICER DANISON CONCEALED INSIDE THE SECURE LOCKER OF I/M GARCIA #42994-054 IN CELL #109 OF UNIT 3A. A REVIEW OF I/M GARCIA'S MEDICAL RECORD BY RN Y. LANTZ INDICATED THAT I/M GARCIA HAS NO MEDICINES PRESCRIBED. THE REMAINING SUBSTANCE AND TEST KIT WAS SECURED AND FORWARDED TO THE SIS OFFICE.

| 12. SIGNATURE OF REPORTING EMPLOYEE | DATE AND TIME | 13. NAME AND TITLE (Printed) |
|---|---|---|
| [signature] | 3-2-99 /11:00 PM | KENNETH C. FLEWELLING, ACTING LT. |

| 14. INCIDENT REPORT DELIVERED TO ABOVE INMATE BY | 15. DATE INCIDENT REPORT DELIVERED | 16. TIME INCIDENT REPORT DELIVERED |
|---|---|---|
| [signature] | 3-3-00 | 530 |

### PART II – COMMITTEE ACTION

17. COMMENTS OF INMATE TO COMMITTEE REGARDING ABOVE INCIDENT

*[handwritten]*

18. A. IT IS THE FINDING OF THE COMMITTEE THAT YOU COMMITTED THE FOLLOWING PROHIBITED ACT.

B. THE COMMITTEE IS REFERRING THE CHARGE(S) TO THE DHO FOR FURTHER HEARING.

C. THE COMMITTEE ADVISED THE INMATE OF ITS FINDINGS AND OF THE RIGHT TO FILE AN APPEAL WITHIN 15 CALENDAR DAYS.

19. COMMITTEE DECISION IS BASED ON THE FOLLOWING INFORMATION

*[handwritten]*

20. COMMITTEE ACTION AND/OR RECOMMENDATION IF REFERRED TO THE DHO (CONTINGENT UPON THE FINDING INMATE COMMITTED PROHIBITED ACT.

*[handwritten]*

| 21. DATE AND TIME OF ACTION | THE UDC CHAIRMAN'S SIGNATURE NEXT TO HIS NAME CERTIFIES WHO SAT ON THE UDC AND THAT THE COMPLETED REPORT ACCURATELY REFLECTS THE UDC PROCEEDINGS. |
|---|---|

PART III - INVESTIGATION

22. DATE AND TIME INVESTIGATION BEGAN

3-5-99    8:29pm

23. INMATE ADVISED OF RIGHT TO REMAIN SILENT: YOU ARE ADVISED OF YOUR RIGHT TO REMAIN SILENT AT ALL STAGES OF THE DISCIPLINARY PROCESS BUT ARE INFORMED THAT YOUR SILENCE MAY BE USED TO DRAW AN ADVERSE INFERENCE AGAINST YOU AT ANY STAGE OF THE INSTITUTION DISCIPLINARY PROCESS. YOUR SILENCE ALONE MAY NOT BE USED TO SUPPORT A FINDING THAT YOU HAVE COMMITTED A PROHIBITED ACT.

THE INMATE WAS ADVISED OF THE ABOVE RIGHT BY        S. Shank        AT DATE TIME    3-5-99    8:29pm

24. INMATE STATEMENT AND ATTITUDE

· Inmate Garcia #42994-054 was identified by this officer and read his rights to which he
acknowledged he understood by saying, "Yes". Inmate Garcia provided the following statement,
"I never been in trouble before. I have alot going for me. You have the wrong guy. I never
got in trouble in this jail or the other jail. I don't use drugs at all." End of statement.

Inmate Garcia displayed a good attitude throughout this investigation.

25. OTHER FACTS ABOUT THE INCIDENT, STATEMENTS OF THOSE PERSONS PRESENT AT SCENE, DISPOSITION OF EVIDENCE, ETC.

Suspended for outside prosecution.
3/3/99 prosecution declined - released for investigation 3/5/99

Inmate Garcia declined to call any witnesses at this time.

See supporting documentation from R.N. Y. Lantz and S.O.S. Danison. (Attached)

26. INVESTIGATOR'S COMMENTS AND CONCLUSIONS

Based on the information contained in section 11 of this incident reports and attached
supporting documentation and inmates statement, I find that Inmate Garcia has been
appropriately charged with code 113 (Possession of narcotics, or related paraphernalia not
prescribed for the individual by the medical staff).

27. ACTION TAKEN

Inmate Garcia is to remain in Administrative Detention pending further action by the UDC.

DATE AND TIME INVESTIGATION COMPLETED.    3-5-99    8:35 pm

S. Shank
PRINTED NAME

PRINTED NAME SIGNATURE OF INVESTIGATOR:        S. Shank

SIGNATURE        Lieutenant
TITLE

# EXHIBIT
# 7



## CHAPTER 3

### [INMATE RIGHTS AND RESPONSIBILITIES §541.12

| RIGHTS | RESPONSIBILITIES |
|---|---|
| 1. You have the right to expect that as a human being you will be treated respectfully, impartially, and fairly by all personnel. | 1. You have the responsibility to treat others, both employees and inmates, in the same manner. |
| 2. You have the right to be informed of the rules, procedures, and schedules concerning the operation of the institution. | 2. You have the responsibility to know and abide by them. |
| 3. You have the right to freedom of religious affiliation, and voluntary religious worship. | 3. You have the responsibility to recognize and respect the rights of others in this regard. |
| 4. You have the right to health care, which includes nutritious meals, proper bedding and clothing, and a laundry schedule for cleanliness of the same, an opportunity to shower regularly, proper ventilation for warmth and fresh air, a regular exercise period, toilet articles and medical and dental treatment. | 4. It is your responsibility not to waste food, to follow the laundry and shower schedule, to maintain neat and clean living quarters, to keep your area free of contraband, and to seek medical and dental care as you may need it. |
| 5. You have the right to visit and correspond with family members, and friends, and correspond with members of the news media in keeping with Bureau rules and institution guidelines. | 5. It is your responsibility to conduct yourself properly during visits, not to accept or pass contraband, and not to violate the law or Bureau rules or institution guidelines through your correspondence. |
| 6. You have the right to unrestricted and confidential access to the courts by correspondence (on matters such as the legality of your conviction, civil matters, pending criminal cases, and conditions of your imprisonment). | 6. You have the responsibility to present honestly and fairly your petitions, questions, and problems to the court. |
| 7. You have the right to legal counsel from an attorney of your choice by interviews and correspondence. | 7. It is your responsibility to use the services of an attorney honestly and fairly.] |

[RIGHTS

RESPONSIBILITIES

8.  You have the right to participate in the use of law library reference materials to assist you in resolving legal problems. You also have the right to receive help when it is available through a legal assistance program.

8.  It is your responsibility to use these resources in keeping with the procedures and schedule prescribed and to respect the rights of other inmates to the use of the materials and assistance.

9.  You have the right to a wide range of reading materials for educational purposes and for your own enjoyment. These materials may include magazines and newspapers sent from the community, with certain restrictions.

9.  It is your responsibility to seek and utilize such materials for your personal benefit, without depriving others of their equal rights to the use of this material.

10. You have the right to participate in education, vocational training and employment as far as resources are available, and in keeping with your interests, needs, and abilities.

10. You have the responsibility to take advantage of activities which may help you live a successful and law-abiding life within the institution and in the community. You will be expected to abide by the regulations governing the use of such activities.

11. You have the right to use your funds for commissary and other purchases, consistent with institution security and good order, for opening bank and/or savings accounts, and for assisting your family.

11. You have the responsibility to meet your financial and legal obligations, including, but not limited to, court-imposed assessments, fines, and restitution. You also have the responsibility to make use of your funds in a manner consistent with your release plans, your family needs, and for other obligations that you may have.]

# EXHIBIT
# 8

```
   ALMD2   540*23 *              SENTENCE MONITORING          *      07-12-2000
   PAGE 001            *         COMPUTATION DATA             *      09:22:32
                                 AS OF 07-12-2000

   REGNO..: 42994-054 NAME: GARCIA, ANTONIO


   FBI NO...........: 674339JA2          DATE OF BIRTH: 08-16-1970
   ARS1.............: ALM/A-DES
   UNIT.............: UNIT 3A             QUARTERS.....: C02-124L
   DETAINERS........: YES                 NOTIFICATIONS: NO

   THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
   THE INMATE IS PROJECTED FOR RELEASE:  02-06-2010 VIA GCT REL

   REMARKS........: D= NY STATE PAROLE

   --------------------CURRENT JUDGMENT/WARRANT NO: 010 --------------------


   COURT OF JURISDICTION...........: NEW YORK, SOUTHERN DISTRICT
   DOCKET NUMBER...................: S49:96CR00374-001
   JUDGE...........................: COTE
   DATE SENTENCED/PROBATION IMPOSED: 06-27-1997
   DATE COMMITTED..................: 10-02-1997
   HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
   PROBATION IMPOSED...............: NO

                    FELONY ASSESS  MISDMNR ASSESS  FINES         COSTS
   NON-COMMITTED.:  $100.00        $00.00          $00.00        $00.00

   RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO       AMOUNT:  $00.00

   --------------------CURRENT OBLIGATION NO: 010 --------------------------

   OFFENSE CODE....: 391
   OFF/CHG: CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE COCAINE
        21 USC 846.

    SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
    SENTENCE IMPOSED/TIME TO SERVE.:  188 MONTHS
    TERM OF SUPERVISION............:    4 YEARS
    CLASS OF OFFENSE...............: CLASS B FELONY
    DATE OF OFFENSE................: 05-08-1996




   G0002       MORE PAGES TO FOLLOW . . .
```

```
ALMD2   540*23 *          SENTENCE MONITORING         *     07-12-2000
PAGE 002 OF 002 *          COMPUTATION DATA            *     09:22:32
                           AS OF 07-12-2000
```

REGNO..: 42994-054 NAME: GARCIA, ANTONIO

------------------------CURRENT COMPUTATION NO: 010 ------------------------


COMPUTATION 010 WAS LAST UPDATED ON 03-31-1999 AT ALM AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

```
DATE COMPUTATION BEGAN..........: 06-27-1997
TOTAL TERM IN EFFECT............:   188 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    15 YEARS       8 MONTHS

JAIL CREDIT.....................:   FROM DATE      THRU DATE
                                    05-08-1996     06-26-1997

TOTAL PRIOR CREDIT TIME.........: 415
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT POSSIBLE..............: 701
TOTAL GCT AWARDED...............: 175
STATUTORY RELEASE DATE (CURRENT): 07-17-2011
SIX MONTH /10% DATE.............: 08-06-2009
EXPIRATION FULL TERM DATE.......: 01-08-2012


PROJECTED SATISFACTION DATE.....: 02-06-2010
PROJECTED SATISFACTION METHOD...: GCT REL
```


```
S0055      NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE
```




# EXHIBIT
# 9



## UNITED STATES DISTRICT COURT
## FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

Antonio Garcia,                    :
         Petitioner                :
                                   :        CIVIL ACTION NO. 1:CV-00-803
v.                                 :
                                   :
Bureau of Prisons,                 :
         Respondent                :
                                   :

### DECLARATION OF R. ZIMANY

I, R. Zimany, do declare and state as follows:

1.   I have been employed by the United States Department of
Justice, Federal Bureau of Prisons for over 25 years.  I have
attended and successfully completed Discipline Hearing Officer
(DHO) training.  I am currently assigned as the DHO at the
Federal Correctional Institution, Allenwood, Pennsylvania (FCI-
Allenwood).

2.   I prepared the Discipline Hearing Officer's report following
a hearing held on March 25, 1999.  All of the procedural
safeguards were implemented in accordance with policy.
Petitioner received written notice of the charges on March 3,
1999; I am an impartial hearing examiner; he was provided with an
opportunity to call witnesses and present evidence; and he was
provided with a written statement of the reasons for the
sanctions imposed.  Finally, Petitioner was represented at the
hearing by D. Golferi, Vocational Training Supervisor.  Exhibit
1 is a true and correct copy of Discipline Hearing Officer Report
Number 663535 which I prepared based upon my findings in this
case.

3.   I am aware that inmate Antonio Garcia, Register Number
42994-054, has filed a Petition for a Writ of Habeas Corpus.  In
that Petition, he alleges that I improperly sanctioned him for
committing the prohibited act of Possession of any  Narcotics,
Marijuana, Drugs, or Related Paraphernalia, a violation of
Offense Code 113.  Inmate Garcia denies that he was in possession
of any narcotics, marijuana or other drugs.  Exhibit 2 is a true
and correct copy of the relevant portions of Program Statement
5270.07, Inmate Discipline and Special Housing, chapter 4.

4.   As noted earlier, Petitioner was charged with Possession of any Narcotics, Marijuana, Drugs, or Related Paraphernalia, a violation of Offense Code 113 of Bureau of Prisons Program Statement 5270.07, Inmate Discipline and Special Housing.   I first determined that Petitioner understood his rights and that there were no procedural errors.   I then heard all of the evidence presented by staff members and by inmate Garcia on his own behalf.   The greater weight of all of the evidence presented supported the conclusion that inmate Garcia had committed the prohibited act of Possession of any Narcotics, Marijuana, Drugs, or Related Paraphernalia as charged.   See Exhibits 1 and 2.

5.   I first heard testimony from inmate Garcia.   He indicated that he understood his rights and that no procedural errors had occurred during the hearing.   He then denied that he had possessed the narcotic pill, and denied having any knowledge that it had been hidden in his locker.   Inmate Garcia further testified that he had never tested positive for drug use, and that he had a good history of programming on the compound (he worked in UNICOR and participated in GED classes).   Finally, he indicated that although he had lived in his cell for over one year, he had no knowledge that a pill had been hidden in his locker.   See Exhibit 1.

6.   In addition to his own testimony, Plaintiff also offered the testimony of Mr. Golferi, his staff representative; and inmate Miguel Polanco, Register Number 28447-054.   See Exhibit 1.

7.   Mr. Golferi testified on behalf of inmate Garcia, and indicated that he was a student in the Vocational Training class and carpentry class.   He further indicated that inmate Garcia was an attentive student who presented few problems, and that inmate Garcia's records indicated no history of drug use.   Finally, Mr. Golferi testified that there had been no violations of inmate Garcia's due process rights at the hearing.   See Exhibit 1.

8.   Inmate Polanco indicated that he had been inmate Garcia's cell mate for over twenty months, and had never known him to be involved with drugs.   He further testified that he did not believe the narcotic pill belonged to inmate Garcia.   See Exhibit 1.

9.   In addition to the evidence and testimony presented by inmate Garcia, I also considered documentary evidence provided by staff.   Specifically, I reviewed a memorandum presented by Lieutenant Womeldorf dated March 16, 1999; a memorandum from Officer Danison dated March 2, 1999; and a memorandum from Registered Nurse Lantz, dated March 2, 1999.   Exhibit 3 is a true and correct copy of Lieutenant Womeldorf's March 16, 1999, memorandum.   Exhibit 4 is a true and correct copy of Officer

Danison's March 2, 1999, memorandum.  Exhibit 5 is a true and correct copy of Nurse Lantz' March 2, 1999, memorandum.

10.  Petitioner also now alleges that his due process rights were violated because he was not provided with copies of these memoranda prior to the hearing.  He indicates that this prejudiced his ability to prepare a defense at the DHO hearing. See Exhibit 1.

11.  Due process, however, requires only that the inmate be provided with adequate notice of the charges, not the evidence to be used at the hearing.  Furthermore, prior to beginning the hearing, I discussed with inmate Garcia and his staff representative all of the information contained in memoranda which had been submitted to me.  Neither inmate Garcia nor his staff representative indicated that the use of these memoranda raised any due process concerns.  In fact, both inmate Garcia and his staff representative agreed that all of inmate Garcia's due process rights had been satisfied.

12.  Neither inmate Garcia nor his staff representative complained that they were unaware of these documents or that the hearing would be prejudiced because they had been unable to review them and prepare a defense.  If either inmate Garcia or his staff representative had indicated at the hearing that they desired to review the documents prior to proceeding with the hearing, they should have requested a postponement to review the documents to be used against inmate Garcia at the hearing.

13.  Inmate Garcia also indicates that I violated his rights by failing to provide him with a memorandum written by then Acting Captain Maiorana.  Inmate Garcia believed that this memorandum contained exculpatory information which could have aided in the preparation of his defense.  Nevertheless, I did not restrict inmate Garcia or his staff representative from reading or utilizing this document.  To the contrary, I was completely unaware of the memorandum at the time of the hearing.

14.  Finally, I considered the Incident Report and Investigation which were prepared when the pill was found hidden in inmate Garcia's locker.  Exhibit 6 is a true and correct copy of the Incident Report and Investigation.

15.  Based upon all of the evidence and testimony provided, the greater weight of the evidence supported a finding that on March 2, 1999, a pill had been found in inmate Garcia's locker.  A field test was conducted on this pill, and it was found to contain heroin.  At that time, the Health Services Department was contacted.  Nurse Lantz confirmed that FCI-Allenwood does prescribe two forms of medication which could have tested

positive for heroin, however, inmate Garcia had not been prescribed either of them. See Exhibit 1.

16. I also considered inmate Garcia's statements that he had no knowledge that the pill had been hidden in his locker, and that the brown color of the pill indicated that it had been in the locker for a considerable period of time. I did not believe, however, that the color of the pill was indicative of the length of time it had been hidden in the locker. See Exhibit 1.

17. Furthermore, Program statement 5270.07, Chapter 3, Inmate Discipline and Special Housing, indicates that "It is your responsibility to keep your area free of contraband." Exhibit 7 is a true and correct copy of Program Statement 5270.07, Inmate Discipline and Special Housing, chapter 3.

18. Inmate Garcia alleged that although he had cleaned the locker thoroughly, the pill was hidden in an area which he could not easily access and, therefore, he did not search. Nevertheless, I found that the pill was hidden in an area within his domain and control. Additionally, I found that inmate Garcia had easy access to the pill which was hidden inside his locker. See Exhibit 1.

19. Therefore, the greater weight of the evidence was conclusive that inmate Garcia had possessed a narcotic pill as charged.

20. Bureau of Prisons policy dictates the appropriate sanction for Possession of any Narcotics, Marijuana, Drugs or Related Paraphernalia. I disallowed 41 days of Good Conduct Time credits. In addition, I suspended inmate Garcia's visiting privileges for 365 days. Finally, I restricted him to Disciplinary Segregation for 60 days See Exhibits 1 and 2.

I declare under penalty of perjury in accordance with the provisions of 28 U.S.C. § 1746 that the above is accurate to the best of my knowledge and belief.

R. Zimany
Discipline Hearing Officer
FCI-Allenwood

July 12, 2000
Date

# EXHIBIT
# 10



# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

Antonio Garcia,                     )
            Petitioner              )
                                    )        Civil Action No.: 1:CV-00-803
v.                                  )
                                    )
Bureau of Prisons,                  )
            Respondent              )
                                    )

## DECLARATION OF DOUGLAS S. GOLDRING

I, Douglas S. Goldring, hereby make the following declaration:

1.   I am an Attorney-Advisor employed by the United States Department of Justice, Federal Bureau of Prisons, and assigned to the Federal Correctional Institution, Allenwood, Pennsylvania (FCI-Allenwood).  I am licensed to practice law in the Commonwealth of Pennsylvania, the Middle District of Pennsylvania, and the Third Circuit Court of Appeals.

2.   I have been assigned to FCI-Allenwood since September 27, 1998.  As a result of my position, I have access to Bureau of Prisons records maintained in the ordinary course of business.

3.   Petitioner is Antonio Garcia, Register Number 42994-054, a federal inmate who is currently incarcerated at the Federal correctional Institution, Allenwood, Pennsylvania (FCI-Allenwood).  Inmate Garcia was sentenced on June 27, 1997, to 188 months imprisonment and four years of supervised release for Conspiracy to Possess With Intent To Distribute Cocaine, in violation of 21 U.S.C. § 846.  His projected release date is currently February 6, 2010, via Good Conduct Time release. Exhibit 8 is a true and correct copy of inmate Garcia's sentence computation data.

4.   The Bureau of Prisons has established an administrative remedy procedure through which an inmate can seek formal review of any complaint regarding any aspect of his imprisonment. In order to exhaust appeals under the Administrative Remedy Procedure for inmates, an inmate must appeal an adverse decision by the Discipline Hearing Officer to Regional Director and Central Office of the Federal Bureau of Prisons. See 28 C.F.R. § 542 et seq. No administrative remedy appeal is considered to have been finally exhausted until considered by the Bureau of Prisons' Central Office.

5.    A review of computerized records maintained by the Federal Bureau of Prisons revealed inmate Garcia has exhausted his administrative remedies regarding the issue(s) raised in this petition.

I declare under penalty of perjury in accordance with the provisions of 28 U.S.C. § 1746 that the above is accurate to the best of my knowledge and belief.

_____          _____
Douglas S. Goldring                         7/12/00
Attorney-Advisor                                Date
FCI-Allenwood

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

ANTONIO GARCIA,                          :
         Petitioner            :
                                :
         v.                     :    Civil No. 1:CV-00-0803
                                :    (Kane, J.)
BUREAU OF PRISONS,                       :
         Respondent            :

## CERTIFICATE OF SERVICE BY MAIL

      The undersigned hereby certifies that she is an
employee in the Office of the United States Attorney for the
Middle District of Pennsylvania and is a person of such age and
discretion as to be competent to serve papers.

      That on July 17 , 2000, she served a copy of the
attached

## EXHIBITS TO RESPONSE TO SHOW CAUSE ORDER

by placing said copy in a postpaid envelope addressed to the
person hereinafter named, at the place and address stated below,
which is the last known address, and by depositing said envelope
and contents in the United States Mail at Williamsport,
Pennsylvania.

Addressee:

Antonio Garcia
Reg. No. 42994-054
FCI Allenwood
P.O. Box 2000
White Deer, PA 17887

MICHELE E. LINCALIS
Paralegal Specialist