

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ANTONIO GARCIA,                   :
      Petitioner         :      CIVIL NO. 1:CV-00-0803
                         :
    v.                     :      (Judge Kane)
                         :
BUREAU OF PRISONS,                :
                         :
      Respondent         :

**FILED**
**HARRISBURG**

JUL 2 9 2002

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

## O R D E R

Petitioner, an inmate presently confined at the Federal Correctional Institution, Allenwood, Pennsylvania ("FCI-Allenwood), filed this petition for writ of habeas corpus pursuant to 28 U.S.C. §2241.  Garcia has paid the required $5.00 filing fee.

Garcia alleges due process violations surrounding a disciplinary hearing which resulted in the loss of good conduct time. (Doc. No. 1).  Petitioner requests that the Incident Report be expunged from his record and that his good conduct time be restored. (<u>Id</u>.).

Respondent contends that the petition should be denied because petitioner's due process rights were not violated. (Doc. No. 3, Response Brief).  This matter is ripe for consideration.  Because petitioner's due process rights were adhered to and the DHO's decision was based on some evidence and was not arbitrary, capricious, or unreasonable, the petition for writ of habeas corpus will be denied.

**BACKGROUND**

On March 2, 1999, Garcia was found to have a brown tablet,

round in shape and in the form of a pill, secured in his locker in his assigned cell in Unit 3-A.  The tablet tested positive for narcotics.  (Doc. No. 4, Exhibit 3).  On March 3, 1999, Garcia received written notice that he was charged with Possession of Narcotics, Marijuana, Drugs, or Related Paraphernalia, a violation of Offense Code 113 of Bureau of Prisons' Program Statement 5270.07, Inmate Discipline and Special Housing. (Doc. No. 4, Exhibit 2, p. 5).  Garcia's disciplinary hearing was held on March 25, 1999 before Discipline Hearing Officer (DHO) Zimany.  (Doc. No. 4, Exhibit 1, DHO Report).

Zimany first determined that Garcia understood his rights and that there were no procedural errors.  (Id. at 1-4; Exhibit 9, Affidavit of R. Zimany, DHO, at ¶ 4).  He then heard all the evidence presented by staff members and then by Garcia on his own behalf.  Id.

Garcia indicated that he understood his rights and that no procedural errors had occurred during the hearing.  He then denied that he possessed the narcotic pill and denied having any knowledge that it had been hidden in his locker.  (Doc. No. 4, Exhibit 1 at 1-2; Exhibit 9, ¶¶ 5-6).

Garcia was represented at the hearing by D. Golferi, Vocational Training Supervisor.  (Doc. No. 4, Exhibit 1, DHO Report).  Golferi also testified at trial that Garcia was a student in the Vocational Training class and carpentry class, that he was an attentive student who presented few problems, and that Garcia's

2

records indicated no history of drug use. Finally, Golferi testified that there had been no violations of Garcia's due process rights at the hearing. Id.

Garcia also offered the testimony of his cell mate, Miguel Polanco. Polanco testified that he had been Garcia's cell mate for over twenty months and had never known him to be involved with drugs, and that he did not believe that the narcotic pill belonged to Garcia. Id.

In addition to the evidence and testimony presented by Garcia, the DHO also considered documentary evidence provided by staff. Specifically, the DHO reviewed a memorandum presented by Lieutenant Womeldorf dated March 16, 1999; a memorandum from Officer Danison dated March 2, 1999; and a memorandum from Registered Nurse Lantz, dated March 2, 1999. Id. and Exhibits 3-5, copies of Memoranda. At no time did Garcia or his staff representative indicate that they were unaware of these documents or that the hearing would be prejudiced because they had been unable to review them and prepare a defense. Id. Finally, the DHO considered the Incident Report and Investigation which were prepared upon discovering the narcotic pill hidden in Garcia's locker. Id.

Based upon all the evidence and testimony provided, the DHO determined that the greater weight of the evidence supported a finding that on March 2, 1999, a pill had been found in Garcia's locker, field tested, and determined to contain heroin. Id. At that time, the Health Services Department was contacted. Nurse

3

Lantz confirmed that FCI-Allenwood does prescribe two forms of medication which could have tested positive for heroin. However, Garcia had not been prescribed either of them. <u>Id</u>.

The DHO also considered Garcia's exculpatory statements that he had no knowledge the pill had been hidden in his locker and that the brown color of the pill indicated it had been in the locker for a considerable period of time. The DHO did not believe, however, that the color of the pill was indicative of the length of time it had been hidden in the locker. <u>Id</u>.

Garcia alleged that the pill was hidden in an area which he could not easily access. The DHO, however, found that the pill was hidden in an area within Garcia's domain and control and that Garcia had easy access to the pill. (Doc. No. 4, Exhibit 9, Zimany Affidavit, ¶ 17-18). Garcia was found guilty and sanctioned in accordance with Bureau of Prisons' policy. (Doc. No. 4, Exhibit 2, copy of Prohibited Acts and Disciplinary Severity Scale). The DHO disallowed forty-one days of Good Conduct Time credits, suspended Garcia's visiting privileges for 365 days, and restricted Garcia to disciplinary segregation for sixty days. (Doc. No. 4, Exhibit 1, DHO Report). Garcia then filed the instant action in which he challenges the disciplinary proceedings which found him guilty. It is undisputed that petitioner has exhausted all available administrative remedies.

**DISCUSSION**

The Fourteenth Amendment of the United States Constitution

4

provides in pertinent part:  "No State shall ...deprive any person of life, liberty, or property, without due process of law...."  The Supreme Court has mandated a two-part analysis of a procedural due process claim:  first, "whether the asserted individual interests are encompassed within the ...protection of 'life, liberty or property(,)'" and second, "if protected interests are implicated, we then must decide what procedures constitute 'due process of law.'"  Ingraham v. Wright, 430 U.S. 651, 672 (1977).  If there is no protected liberty or property interest, it is obviously unnecessary to analyze what procedures were followed when an alleged deprivation of an interest occurred.  Liberty interests protected by the Fourteenth Amendment may arise either from the Due Process Clause itself or from state law.  Meachum v. Fano, 427 U.S. 215, 223-26 (1976).

It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  However, having said that, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings as in the case in which an inmate loses good conduct time.  Id.  Since Garcia's sanctions included the loss of good conduct time, petitioner clearly has a liberty interest in this matter.  Therefore, this Court must review the procedures afforded to petitioner.

In Wolff, the Supreme Court set forth the following minimum

procedural due process requirements for prison disciplinary proceedings: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; and (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action.  Id.

The Court further opined that broad discretion is accorded to the prison officials with limited judicial review of institutional due process to determine if their decision is arbitrary or capricious.  Id.  An additional procedural requirement as to the standard of review required in a disciplinary proceeding was set forth in Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill, 472 U.S. 445, 453-56 (1985).  In that case, the Court held that there must be some evidence which supports the conclusion of the disciplinary tribunal.  Id.[1]

---

[1]After Hill, the Third Circuit indicated that the standard to be applied in disciplinary proceedings was that contained in 28 C.F.R. §541.17(f), which at the time was a "substantial evidence" test.  Henderson v. Carlson, 812 F.2d 874, 879 (3d Cir. 1987). Subsequently, the Bureau of Prisons amended its regulations to be more akin to the Hill holding by requiring only that the DHO's decision be "based upon at least some facts," with the decision to be "based on the greater weight of the evidence."  28 C.F.R. §541.17(f) (1995).

The requirements of the Wolff Court has since been codified as to federal prisoners under the Code of Federal Regulations. Under Title 28, §541, inmate discipline and special housing units, staff shall prepare an Incident Report when there is reasonable belief that a violation of Bureau regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.14.

The BOP regulations provide that each BOP institution shall have an independent hearing officer (DHO) assigned to conduct administrative fact-finding hearings covering alleged acts of misconduct and violations of prohibited acts. 28 C.F.R. § 541.16(a). Furthermore, the DHO shall conduct hearings, make findings, and impose appropriate sanctions for incidents of inmate misconduct. 28 C.F.R. § 541.16(c).

Based on the record before this Court, Garcia was afforded each of the five due process elements spelled out in Wolff. Specifically, Garcia (1) received written notice of the charges on March 3, 1999, well in advance of the March 25, 1999 hearing; (2) was heard by an impartial hearing examiner; (3) was provided with an opportunity to call witnesses and present evidence; (4) was provided staff representation; and (5) was provided with a written statement of the reasons for the sanctions imposed. (Doc. No. 4, Exhibit 1, DHO Report). The DHO heard testimony from Garcia, his staff representative, and inmate Miguel Polanco. The DHO also considered the Incident Report and Investigation and documentary

7

evidence provided by staff.  After reviewing all of this evidence and testimony, the DHO determined that the greater weight of the evidence supported a finding that Garcia had committed the prohibited act as charged.  Id.

To the extent that Garcia argues that Due Process rights were violated because he was not given advance notice of several memoranda used against him at the hearing, the Court finds this argument to be without merit.  Due Process requires only that the inmate be given twenty-four hour notice of the charges, not the evidence to be used at the hearing.  Wolff, supra.  Garcia was made aware of the charges well in advance of the hearing, and the memoranda did not change them.  Additionally, the petitioner was provided with the memoranda at the hearing, and the DHO discussed all of the documentary evidence which had been submitted with Garcia and his staff representative.  At that time, Garcia, or his staff representative could have objected to any of the documents, sought a postponement of the hearing, or challenged the evidence during the hearing.  They did not.  To the contrary, both Garcia and his staff representative agreed that none of Garcia's procedural rights had been violated.  (See Doc. No. 4, Exhibit 1). Thus, petitioner's argument is without merit.

Finally, Garcia's argument that the DHO failed to provide petitioner with an exculpatory memorandum written by then Acting Captain Maiorana, is equally without merit.  Not only was the hearing examiner completely unaware of the memorandum at the time

of the hearing, (Doc. No. 4, Zimany Affidavit at ¶ 13), but if Garcia believed he had been prejudiced by the DHO's failure to provide or utilize a particular document, he should have objected or sought a postponement. Neither he nor his staff representative objected to the DHO's failure to provide the memorandum. Thus, no due process violation has occurred.

Because petitioner's due process rights were adhered to and the DHO's decision was based on some evidence and was not arbitrary, capricious, or unreasonable, the petition for writ of habeas corpus is denied.

NOW, THIS 29th DAY OF JULY, 2002, IT IS HEREBY ORDERED THAT:

1.    The petition for writ of habeas corpus is denied.

2.    The Clerk of Court is directed to close this case.

_____
YVETTE KANE
United States District Judge

YK:dlb